COMMONWEALTH vs. A JUVENILE.

Middlesex. February 1, 1988. — May 3, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Constitutional Law,* Admissions and confessions, Assistance of counsel, Parent and child, Evidence obtained by private party. *Evidence,* Admissions and confessions. *Practice, Criminal,* Assistance of counsel. *Identification. Due Process of Law,* Identification.

At the hearing on a motion to suppress a confession which the juvenile defendant in an assault case had made to the assistant director of a detention facility to which the juvenile had been committed, evidence that the juvenile was subject to continuous supervision and was not free to leave the facility, that an investigation had focused on the juvenile, that the assistant director was convinced the juvenile had committed a crime and questioned him several times before the confession, that the juvenile had been physically restrained from leaving the premises immediately prior to his confession, and that the assistant director had a duty to inform the police if he learned a juvenile had committed a crime warranted the judge's conclusions that the assistant director's interrogation of the juvenile was custodial and that he was acting as an instrument of the police. [277-279]

There was no error in a judge's suppression of a juvenile defendant's confession to an assault, made at a police station, where the evidence and the judge's findings thereon warranted his conclusion that the juvenile had no meaningful opportunity to exercise his common law right to consult a parent, interested adult, or attorney to ensure that his waiver of Miranda rights was knowing and intelligent, and where no evidence in the record would have warranted a finding that the juvenile had a high degree of intelligence, experience, knowledge, or sophistication. [279-280]

There was no error in a judge's suppression of an assault victim's proffered in-court identification of a juvenile defendant, where a police officer had shown the victim a photograph of the juvenile after the juvenile's arrest and had told her that the juvenile was charged with assaulting her, and where the Commonwealth failed to show by clear and convincing evidence that the victim's identification testimony would have been free from the taint of the improper confrontation. [280-281]

COMPLAINTS received and sworn to in the Malden Division of the District Court Department on August 26, 1985.

A pretrial motion to suppress evidence was heard by *James W. Killam, III, J.*

An application for an interlocutory appeal was allowed by *Donald R. Grant, J.,* in the Appeals Court.

The Supreme Judicial court on its own initiative transferred the matter from the Appeals Court.

*Michael Fabbri,* Assistant District Attorney, for the Commonwealth.

*Catherine Booth Correia* for the defendant.

WILKINS, J. A District Court judge allowed the juvenile's motion to suppress two confessions and any in-court identification of him by the victim. We transferred the Commonwealth's appeal here, and now affirm the order allowing the motion to suppress.[1]

On July 19, 1985, a woman was dragged out of her motor vehicle which was parked near her home in Wakefield. After a struggle her attacker fled. She told the police that the attacker was a black teenaged male and gave a general description of him.

A private, nonprofit organization under contract to the Department of Youth Services (DYS) operated a home nearby for troubled adolescents called the 735 House. A police officer went to the 735 House shortly after the attack, spoke with a counselor about the incident, and observed the juvenile in the house at the time. During the next several days attention focused on the juvenile. In circumstances we describe more fully in connection with specific issues, the juvenile confessed to the assault to the assistant director of the 735 House, who took the

---

[1] The motion to suppress was heard and decided in December, 1985, and the transcript was promptly filed. The Commonwealth's persistent attempts to obtain written findings from the judge were unavailing. In June, 1987, a judge of the Appeals Court, correctly characterizing the motion judge as "clearly delinquent," allowed the Commonwealth's motion to docket its appeal even though the clerk unavoidably had failed to assemble the record because the motion judge had retained the file for the ostensible purpose of making findings of fact. Prompt fact finding is essential, particularly in a case involving a juvenile. The judge did make a few brief, incomplete, and largely conclusional findings and rulings at the end of the hearing.

juvenile to the police station the following day, where he again confessed. Later that day a Wakefield police officer showed the victim a picture of the juvenile and told her that the juvenile had confessed to the assault and had just been arrested.

The juvenile moved to suppress the confessions and the victim's in-court identification of him. He argued successfully to the motion judge that he was entitled to and did not receive Miranda warnings before the first confession and that, as a juvenile, he did not have an opportunity for a meaningful consultation with an interested adult on the question whether he should waive his rights before he confessed to the police. As to the victim's identification testimony, the defendant persuaded the judge that in the circumstances the improper showing of his photograph to the victim required suppression of any future identification.

1.   The judge properly suppressed the juvenile's confession to Neil Borden, the assistant director of the 735 House. The judge was warranted in finding that Borden's interrogation of the juvenile was custodial and that Borden was acting as an instrument of the police. In such circumstances, the juvenile was entitled to Miranda warnings and no warnings were given. *Miranda* v. *Arizona,* 384 U.S. 436, 444 (1966).[2]

On the question whether the juvenile was in custody, the test is how a reasonable person in the juvenile's position would have understood his situation. See *Berkemer* v. *McCarthy,* 468 U.S. 420, 442 (1984); *Commonwealth* v. *Bryant,* 390 Mass. 729, 736-737 (1984). The evidence warranted a finding that a reasonable person would have believed himself to be in custody. The factors to be considered in deciding the question (see *Commonwealth* v. *Bryant, supra* at 737) point toward a finding of custody. The interrogation took place not in the juvenile's home but in a detention facility to which the DYS had committed the juvenile, at which he was subject to continuous supervision, and from which he was not free to leave. The

---

[2]The juvenile also would have been entitled to (and did not have) the opportunity for meaningful consultation with an interested adult concerning his waiver of rights. See *Commonwealth* v. *MacNeill,* 399 Mass. 71, 78 (1987).

fact of detention might itself establish that the juvenile was in custody for Miranda purposes. See *Mathis* v. *United States,* 391 U.S. 1 (1968). There was, however, more. The investigation had focused on the juvenile. Borden testified that he was convinced the juvenile had committed a crime and questioned him several times before the juvenile confessed. The defendant had been physically restrained from leaving the premises immediately prior to his confession. There was no realistic way in which the juvenile could have avoided the persistent questioning. The judge was thus warranted in concluding that the interview was coercive and not voluntary and that the defendant was in custody.

Further, the judge was justified in concluding in all the relevant circumstances that Borden was in "an enforcement status" with respect to the juvenile. A finding that Borden was functioning as an instrument of the police was warranted, and, therefore, the juvenile was entitled to Miranda warnings. See *Commonwealth* v. *Tynes,* 400 Mass. 369, 373 (1987), and *Commonwealth* v. *Allen,* 395 Mass. 448, 453 (1985), and cases cited, for statements of the governing principles. See also *Estelle* v. *Smith,* 451 U.S. 454, 467 (1981) (defendant entitled to Miranda warnings before interview with court-appointed psychiatrist who later testified at sentencing hearing); *Mathis* v. *United States, supra* at 4 (defendant entitled to warnings before custodial interrogation by a "civil investigator" of the Internal Revenue Service because civil investigation may become a criminal one); *United States* v. *Diaz,* 427 F.2d 636, 638 (1st Cir. 1970) (defendant under arrest and in police custody, entitled to warnings from draft board secretary); *Commonwealth* v. *Chacko,* 500 Pa. 571, 580 n.3 (1983) (inmate entitled to warnings before questioning by prison director of treatment). Borden testified that he had a duty to report to the police if he learned a juvenile had committed a crime. He was not acting as a private citizen. Therefore, cases on which the Commonwealth relies concerning private citizens with no police connection do not apply here. See, e.g., *Commonwealth* v. *Tynes, supra* at 373 (statements to unidentified off-duty

police officer outside his jurisdiction); *Commonwealth* v. *Rancourt,* 399 Mass. 269, 271-275 (1987) (admissions to fellow inmate with no prior arrangement with police); *Commonwealth* v. *Rodwell,* 394 Mass. 694, 698-699 (1985) (same); *Commonwealth* v. *Mahnke,* 368 Mass. 662, 676-677 (1975), cert. denied, 425 U.S. 959 (1976) (admissions in interrogation by "concerned group" of private citizens).

2. We come next to the question whether the juvenile's confession at the police station was properly suppressed.[3] Our standards for determining whether a juvenile has been given a sufficient opportunity for consultation with respect to his waiver of Miranda rights have a common law basis. See *Commonwealth* v. *MacNeill,* 399 Mass. 71, 78 (1987); *Commonwealth* v. *A Juvenile,* 389 Mass. 128, 134-135 (1983). They are not a constitutionally mandated aspect of the Miranda rule, nor are they founded on State constitutional principles.

The standard for one who has attained the age of fourteen is that there should ordinarily be an opportunity for a meaningful consultation with a parent, interested adult, or attorney to ensure that the waiver is knowing and intelligent. In the absence of such an opportunity, any statement should be suppressed unless the circumstances demonstrate a high degree of intelligence, experience, knowledge, or sophistication on the part of the juvenile. *Commonwealth* v. *MacNeill, supra. Commonwealth* v. *A Juvenile, supra* at 134.

The judge was warranted in concluding, and perhaps even required to conclude, that the juvenile had no opportunity for meaningful consultation. Borden testified that he had checked with DYS, had told the juvenile that he would have to repeat his confession to the police, and, with the juvenile's caseworker, Lewis, had taken the juvenile to the police station. The judge found that Borden and Lewis were not standing in the place of parents but rather were acting as DYS "employees"

---

[3]The juvenile makes no claim that, because his confession to Borden at 735 House was obtained in violation of his Miranda rights, the confession at the police station must be suppressed. The claim in all likelihood would fail under the Constitution of the United States. See *Oregon* v. *Elstad,* 470 U.S. 298, 303-309 (1985).

required to report to the police concerning the defendant. Also he found that, if they were to have acted in the place of parents, they appeared not to understand their role. The juvenile hardly could reasonably have thought Borden and Lewis were there to help him.

In his brief findings and rulings from the bench, unfortunately the judge did not discuss the question whether the circumstances demonstrate that the juvenile had a high degree of intelligence, experience, knowledge, or sophistication. His·determination to suppress the police station confession could be construed as an implied finding that the Commonwealth had not proved the point. The judge should have made findings and an explicit ruling on the issue, but the omission is not crucial here because there is no evidence in the record that would have warranted a finding that the juvenile had a high degree of intelligence, experience, knowledge, or sophistication. The judge did not err in suppressing the juvenile's confession in the police station.

3. The Commonwealth also challenges the judge's ruling that the victim's in-court identification must be suppressed. A Wakefield police officer showed a photograph of the juvenile to the victim after his arrest and told her that the juvenile was charged with the assault on her. This act was impermissibly suggestive, and the Commonwealth does not argue otherwise. It does argue, however, that the victim's identification is admissible because it has shown by clear and convincing evidence that the identification had a source independent of the suggestive confrontation or was otherwise reliable. See *Commonwealth* v. *Melvin,* 399 Mass. 201, 205 (1987); *Commonwealth* v. *Correia,* 381 Mass. 65, 78 (1980); *Commonwealth* v. *Botelho,* 369 Mass. 860, 866 (1976). In effect the Commonwealth is arguing that, as a matter of law, the evidence shows clearly and convincingly that the victim's identification testimony would be free from the taint of the improper confrontation.

The Commonwealth did not meet that heavy burden. Although the juvenile's motion to suppress raised this issue, the Commonwealth did not present the victim as a witness in the

suppression hearing. Her testimony was indispensable to any attempt to prove by clear and convincing evidence that her identification testimony was admissible in spite of the suggestive confrontation. The judge's suppression of any in-court identification of a juvenile by the victim was not error.

4. The judge's order allowing the juvenile's motion to suppress is affirmed.

*So ordered.*