COMMONWEALTH *vs.* IRA I., a juvenile
(and eleven companion cases[1]).

Hampden. May 8, 2003. - July 23, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Admissions and confessions, Evidence obtained by private
party. *School and School Committee,* School principal. *Practice, Criminal,*
Voluntariness of statement, Disclosure of evidence, Discovery, Motion to
suppress.

A Juvenile Court judge erred in dismissing cases against four students accused
of beating a classmate on the grounds that the Commonwealth failed to
comply with pretrial discovery orders by not providing the juveniles with
statements taken by, and in the possession of, their school's assistant
principal, where the statements were not in the prosecutor's possession,
custody, or control, and where the assistant principal was not an agent of
the prosecution team or police. [809-811]
This court concluded that Miranda warnings were not required to be given to
students investigated by school officials in conjunction with potentially
criminal matters, where the school officials did not act as agents or instru-
ments of the police. [811-812]
A Juvenile Court judge erred in allowing four juvenile defendants' motions to
suppress statements made by them during an investigation by their school's
assistant principal, where the record contained no evidence that the police
directed or controlled the investigation [812-814]; where the juveniles
were not subject to custodial interrogation requiring Miranda warnings
[814-815]; and where the statements were not shown to have been
involuntary [815-816].

COMPLAINTS received and sworn to in the Hampden County
Division of the Juvenile Court Department on June 21, 2001.

Pretrial motions to suppress evidence were heard by *Judith A.
Locke,* J., and motions to dismiss were also heard by her.

An application for leave to prosecute an interlocutory appeal
was allowed by *Greaney,* J., in the Supreme Judicial Court for
the county of Suffolk, and the appeal was reported by him to

---

[1]Three against Justin R., three against Danny C., three against Andy C., and
two against Ira I., all juveniles. The names are assigned pseudonyms.

the Appeals Court. After consolidation with the pending appeal, the Supreme Judicial Court granted an application for direct appellate review.

*Jane Davidson Montori*, Assistant District Attorney, for the Commonwealth.

*Theodore F. Riordan* (*Deborah Bates Riordan* with him) for Ira I.

*John M. Corridan*, for Justin R., was present but did not argue.

*Lisa Siegel Belanger*, for Danny C., was present but did not argue.

*Frank H. Spillane*, for Andy C., submitted a brief.

IRELAND, J. In June, 2001, four middle school students were charged in the beating of a classmate. After an evidentiary hearing, a Juvenile Court judge suppressed statements made by the juveniles to the school's assistant principal under the theory that the assistant principal's "investigation . . . was under the guise of a governmental agency, . . . no Miranda rights [were] given, [and] there was no opportunity for parental involvement." The judge subsequently dismissed the cases without prejudice on the grounds that the Commonwealth failed to comply with discovery orders. A single justice of this court allowed the Commonwealth's application for interlocutory appeal from the allowance of the motions to suppress, and ordered the appeal consolidated with the Commonwealth's appeal from the order of dismissal then pending in the Appeals Court. We granted Ira's application for direct appellate review. Because we conclude that the assistant principal was not acting as an agent of the police or prosecution, we reverse the allowance of the motions to dismiss and the motions to suppress.

1. *Facts.*

The juveniles, Ira, Justin, Danny, and Andy, all thirteen or fourteen years old, were each charged with two counts of assault and battery by means of a dangerous weapon (a rock and a shod foot) and one count of assault and battery on the complainant. On June 5, 2001, the day of the alleged incident, the complainant's mother contacted Albert Lapan, the assistant principal of the Duggan Middle School. According to Lapan,

the complainant's mother told him "that her son had been assaulted on the way home from school." The next morning Lapan spoke with the complainant who "said there were problems on the bus. When [the complainant] got off the bus and was walking home [on a city street], he was approached by some students" who hit him, and other people kicked him after he fell down. The complainant identified Justin and Danny as two of his attackers.

Lapan investigated the alleged June 5 incident because he believed that it was his responsibility "to look into matters from when children leave for school in the morning to when they return home at night, a term called portal-to-portal jurisdiction for school officials." He testified that it was "standard . . . when an incident like this takes place . . . [to] take statements and . . . bring the individuals down to [his] office." Lapan was clear, however, that he looked into such incidents for school disciplinary purposes, and not to gather or provide information for any potential law enforcement or court action.

In the course of investigating the alleged incident, Lapan spoke with the four juveniles, as well as other students who might have been on the bus. On June 6 and 7, Lapan individually "called down" the four juveniles to his office and questioned each one for approximately fifteen to twenty minutes. Lapan warned each juvenile that "there would be consequences for [his] actions." It appears that Lapan also took written statements from five students: the complainant, Ira, Justin, Andy, and a student whom Justin named as being involved in the incident, but who was not charged in this case. Lapan could not remember whether he asked the fourth juvenile, Danny, to write a statement. Three of the juveniles, Justin, Danny, and Ira, admitted to Lapan that they had hit the complainant. Andy, however, maintained his innocence.

Lapan testified that it was school procedure to talk to the parents of the students involved in the incident. He further testified that he contacted each juvenile's parents after he talked with the particular student. In addition, Lapan indicated that he told the complainant's mother (in accordance with his usual practice) the "names . . . of people that were involved" and that she "[could] further this through the court system if [she] wish[ed]."

It appears that the police were first made aware of the alleged June 5 attack that day, when the complainant's mother reported the incident.[2] On June 20, 2001, Lapan gave a statement about the alleged attack to Officer Robert V. Majewski, Jr., of the Springfield police department. Officer Majewski testified that he also took a statement from the complainant, but it does not appear that he took any other statements. On June 21, 2001, complaints were issued against the four juveniles.

Three days before the scheduled trial date, Ira filed a motion to suppress "any oral or written statements allegedly made to Assistant Principal Albert Lapan." The juvenile claimed that any statements he made were "pursuant to an unlawful interrogation," because he was not given Miranda warnings and the statements were not voluntary. On the scheduled trial date, the judge allowed the other juveniles to join Ira's motion to suppress, over the Commonwealth's objection. On the same day, the juveniles each filed a motion to dismiss based on the Commonwealth's failure to provide discovery.[3] After an evidentiary hearing, the judge allowed the motions to suppress and the motions to dismiss. Several months later, the Commonwealth filed motions to reconsider or, alternatively, to indicate whether the dismissals were with or without prejudice. Although the judge denied the motions to reconsider, she issued a written order clarifying that the cases were dismissed without prejudice. The

---

[2] The juveniles contend that the testimony from the hearing on the motions to suppress indicates that Lapan was the person who first made the investigating officer, Officer Robert V. Majewski, Jr., aware of the alleged June 5 incident. Given the totality of the circumstances in these cases, our conclusion is unaffected by whether Lapan contacted Officer Majewski, or Officer Majewski contacted Lapan.

[3] The record is sparse concerning how or when the juveniles' attorneys became aware of either the oral or written statements. The only information before us is as follows: the Commonwealth claims that the juveniles were informed as "part of pre-trial discovery" that Lapan took oral statements because that information was contained in Lapan's written statement to Officer Majewski (which was produced); the prosecutor averred that she was unaware of the juveniles' written statements until the day of the hearing, when Ira's counsel informed her of their existence; Danny's attorney stated at the hearing that his motion to suppress was "based on some information that I just [found] out a week ago"; and Justin's motion to dismiss indicates that his attorney was "never given written statements until [the day of the hearing]."

Commonwealth appeals from the allowance of the juveniles' motions to suppress and the motions to dismiss.

2. *Discussion.*

A. *Motions to dismiss.* We will uphold a judge's order to dismiss without prejudice unless there has been "an abuse of discretion." *Commonwealth* v. *Anderson*, 402 Mass. 576, 579 (1988), and cases cited. "On appellate review of a claim of an abuse of discretion by a trial judge, '[t]he question is not whether we . . . should have made an opposite decision from that made by the trial judge. To sustain . . . [the claim] it is necessary to decide that no conscientious judge, acting intelligently, could honestly have taken the view expressed by him.' " *Commonwealth* v. *Bys*, 370 Mass. 350, 361 (1976), quoting *Davis* v. *Boston Elevated Ry.*, 235 Mass. 482, 502 (1920). Because we conclude that nothing in the record shows it was warranted, we reverse the allowance of the motions to dismiss.

The judge allowed the juveniles' motions to dismiss because she concluded that the Commonwealth failed to comply with pretrial discovery orders. Although the judge did not specify how the Commonwealth violated the discovery orders, it is apparent that her decision was based on the prosecutor's failure to provide the juveniles with the statements taken by assistant principal Lapan.[4] Thus, implicit in the judge's ruling is a finding that the discovery orders required the prosecutor to give the juveniles information that was in Lapan's possession.

The discovery orders applied to oral and written statements "within the possession, custody, or control of the prosecutor, or . . . persons under his direction and control."[5] Mass. R. Crim. P. 14 (a) (1) (A) and (a) (2), 378 Mass. 874 (1979). See

---

[4]The juveniles' briefs allege that the prosecutor violated the discovery orders by failing to provide the juveniles' written statements prior to trial. There is no evidence that the Commonwealth failed to provide counsel with "pictures" or "medical reports," as alleged in Danny's and Ira's written motions.

[5]The record appendix does not include a copy of the discovery orders. However, Danny's brief included a standard pretrial conference report form that provides for all discretionary discovery, including statements made by the juvenile or codefendant, if "within the possession, custody or control of the prosecutor." This is consistent with the Commonwealth's representation at oral argument. We take this opportunity, however, to remind litigants and attorneys that the appellant is required to "file an appendix to the briefs" that

*Commonwealth* v. *Wanis*, 426 Mass. 639, 643 (1998) (discovery orders that "directed the prosecution to produce the records . . . cannot stand" when "no showing that the prosecutor had access to [such] materials, or that the [possessor of the records] was obligated to provide its . . . files to the prosecution"). We are guided by the interpretation of the phrase "possession or control" in the context of a prosecutor's duty to provide exculpatory information. In determining the scope of a prosecutor's duty, we have concluded that "[i]nformation known to an independent witness, but unknown to the prosecution, is not within the possession and control of the prosecution unless that witness has acted, in some capacity, as an agent of the government in the investigation and prosecution of the crime." *Commonwealth* v. *Beal*, 429 Mass. 530, 532 (1999). See *Commonwealth* v. *Martin*, 427 Mass. 816, 824 (1998), and cases cited ("A prosecutor's obligations extend to information in possession of a person who has participated in the investigation or evaluation of the case and has reported to the prosecutor's office concerning the case").

Applying these standards, we conclude that materials that were in Lapan's possession were not in the prosecutor's "possession, custody, or control," and therefore the prosecutor did not violate any discovery order. In particular, there is no evidence in the record that Lapan acted as an agent of the prosecution or of the police, as discussed *infra*. Nor is there any evidence that Lapan "participated in the investigation or evaluation of the case and has reported to the prosecutor's office concerning the case." *Commonwealth* v. *Martin, supra*. Contrary to Justin's contention, there is no evidence that Lapan gave the police copies of the juveniles' written statements, or that the police had any knowledge that such written statements existed. Lapan's statement to the police, which briefly describes the interviews but does not mention any written statements, was the only evidence adduced at the hearing regarding police awareness of Lapan's actions. Similarly, there is nothing in the record to indicate that prior to the day of trial, the prosecutor

"shall contain . . . any paper filed in the case relating to an issue which is to be argued on appeal." Mass. R. A. P. 18 (a), as amended, 425 Mass. 1602 (1997).

was aware of, or had possession of, the written statements. To the contrary, the Commonwealth represents that the prosecutor first learned of the written statements on the day of the trial, when Ira's attorney informed her of their existence.[6] The prosecutor averred that as soon as she learned of the written statements, she asked Lapan to send them by facsimile transmission and "immediately" provided the statements to the juveniles' counsel. Furthermore, although the juveniles may not have known what the others had said or written, each of the three who wrote statements was aware that he had done so.

Because of our conclusion that assistant principal Lapan was not an "agent[]" of the prosecution team," *Commonwealth* v. *Beal, supra* at 532, and because there is no evidence that the Commonwealth was aware of the juveniles' written statements, we reject Andy's argument that the prosecutor *should* have known about the written statements. See *Commonwealth* v. *Martin, supra* at 823 ("prosecution had a duty to inquire concerning the existence of scientific tests, at least those conducted by the Commonwealth's own crime laboratory").

Because the dismissals were premised on an erroneous conclusion of law, and because there is no basis in the record for dismissal, we reverse the allowance of the motions to dismiss. Given these circumstances, we reject the juveniles' argument that the judge's orders to dismiss must be affirmed because the Commonwealth has not shown that it would be prejudiced from filing new complaints.[7]

B. *Motions to suppress.* A motion judge "determin[es] . . . the weight and credibility of the testimony" presented at the evidentiary hearing. *Commonwealth* v. *Moon*, 380 Mass. 751,

---

[6]This information appears only in the prosecutor's affidavit in support of the Commonwealth's motion to reconsider. We reject Danny's contention that it is improper to consider this affidavit. Contrary to the juvenile's claim, the record reflects that the Commonwealth *did* file notices of appeal from the judge's orders denying the Commonwealth's motions to reconsider the allowance of the dismissals of the complaints. Furthermore, the docket sheets indicate that there was a hearing on the motions to reconsider, and the judge allowed the motions in part, as she issued written orders indicating that the dismissals were without prejudice.

[7]Because we conclude that the judge's orders to dismiss the cases without prejudice were an abuse of discretion, we need not address the other grounds for reversal argued by the Commonwealth.

756 (1980). In reviewing a judge's ruling on "a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. Although the judge's conclusions of law are also "entitled to substantial deference," we independently review "legal conclusion[s] . . . where [they are] of constitutional dimensions." *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978), and cases cited.

In her findings and rulings from the bench, the judge concluded "that the investigation that took place by [assistant] principal Lapan was under the guise of a governmental agency and that toward that end, there was certainly no Miranda rights given, [and] there was no opportunity for parental involvement." Because the judge determined that it was immaterial whether the assistant principal was acting "at the behest" of the police, she did not make any specific findings on that issue. Rather, the judge concluded that "[i]f [the assistant principal] holds himself out as law enforcement, if the young people, very young people are not free to leave, are in a custodial situation, there are due process rights. . . . When children are treated in a custodial fashion as opposed to in a school fashion, there are certain due process rights that attend and I find that none of them attended to any of these defendants today." Because we conclude that these rulings are erroneous as a matter of law, we reverse the allowance of the motions to suppress.[8]

School officials acting within the scope of their employment, rather than "as [instruments] of the police [or] as [agents] of the police," are not required to give Miranda warnings prior to questioning a student in conjunction with a school investigation. *Commonwealth* v. *Snyder*, 413 Mass. 521, 532 (1992), and cases cited. The judge's ruling to the contrary is inconsistent with our precedent and cannot stand.[9] *Id.* The juveniles posit that even if we conclude, as we have, that Miranda warnings are not

---

[8]Because we conclude that the motions to suppress were erroneously granted as a matter of law, we decline to address the Commonwealth's arguments that the motions did not comply with the rules of criminal procedure.

[9]We decline the juveniles' invitation to overrule the portion of *Commonwealth* v. *Snyder*, 413 Mass. 521, 532 (1992), that concludes that the Miranda rule does not apply to a "school administrator who is acting neither as an instrument of the police nor as an agent of the police." We also reject

automatically required when a school official questions a student about potentially criminal matters, the statements should nevertheless be suppressed because Lapan acted as an agent of the police, the juveniles were in custody, and the statements were not otherwise voluntary. We address each of these arguments in turn.

To the extent that the judge's ruling was, as two of the juveniles argue, based on a finding that assistant principal Lapan was acting as an agent of the police, the finding was clearly erroneous. The juveniles contend that it is possible to infer that Lapan was an agent of the police or, in the alternative, that there was a school policy to provide the police with information about possible criminal activity.[10] We disagree. The record contains no evidence that the police directed, controlled, or otherwise initiated or influenced assistant principal Lapan's investigation of the alleged incident. Cf. *Commonwealth* v. *A Juvenile*, 402 Mass. 275, 278 (1988), and cases cited ("finding that [assistant director of facility under contract with Department of Youth Services] was functioning as an instrument of the police was warranted"). Rather, the testimony indicated that Lapan's investigation was independent of any police investigation and that he acted reasonably as a school administrator. Even if there was evidence in the record that the school's policy

Justin's argument that *Snyder* requires Miranda-type warnings in these circumstances under art. 12 of the Massachusetts Declaration of Rights, as our decision in *Snyder* was grounded in the United States Constitution. *Id.* at 530-531. As in that case, the juveniles here have made no legal arguments "that we should apply different principles and reasoning under our law from those that the Supreme Court has applied in its *Miranda* opinion and subsequently." *Id.* at 531.

[10]The juveniles posit that the following supports a finding that Lapan was an agent of the police: Lapan "conducted an investigation" of the alleged incident even though it did not occur on school property; Lapan "interview[ed]" the complainant, the juveniles, and other students who might have witnessed the alleged event, and procured written statements from some of the students; Lapan informed the complainant's mother that she could seek criminal charges against the juveniles and testified that, in such circumstances, he "always [told] parents" they could bring criminal charges; the record does not contain any information concerning a school-related punishment of the juveniles; Officer Majewski testified that he was a member of the "Youth Aid Bureau," which "work[ed] in the schools [and] with juvenile issues," and that Lapan contacted him about the alleged incident; and Lapan's statement to the police indicates that he contacted Officer Majewski.

was to *provide* information in its possession to the police, that alone is insufficient to transform school officials into agents of the police. See *Commonwealth* v. *Lawrence L., post* 817, 821-822 (2003); *Commonwealth* v. *Snyder, supra* at 532 ("The fact that the school administrators had every intention of turning the marihuana over to the police does not make them agents or instrumentalities of the police in questioning [the defendant]").

Moreover, Miranda warnings were not required prior to questioning because the juveniles were not subject to "custodial interrogation." *Miranda* v. *Arizona,* 384 U.S. 436, 444 (1966). In the context of protecting a person's Fifth Amendment rights, "custodial interrogation" refers to "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way." *Id.* at 478. In determining whether there was custodial interrogation we look at "how a reasonable person in the juvenile's position would have understood his situation." *Commonwealth* v. *A Juvenile, supra* at 277, and cases cited. The court considers the following factors: where the interrogation took place; "whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect"; the tone and nature of the questioning; and "whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest." *Commonwealth* v. *Brum,* 438 Mass. 103, 111-112 (2002), quoting *Commonwealth* v. *Groome,* 435 Mass. 201, 211-212 (2001).

The juveniles argue that they were "in custody" because they were questioned individually (and three were asked to write statements) by the assistant principal, in his office, for fifteen to twenty minutes. They argue that a student summonsed to the assistant principal's office to discuss a potentially criminal matter would not feel free to leave, and that they did not consider themselves free to leave. These facts alone are insufficient to establish custodial interrogation. Cf. *Commonwealth* v. *Magee,* 423 Mass. 381, 385 (1996) ("defendant was interviewed in a closed room at a police station by a succession of three law enforcement officers over a period of approximately seven

hours" and "was repeatedly told that she would not receive [requested mental health] help until she answered the interrogators' questions"); *Commonwealth* v. *A Juvenile, supra* at 277-278 (juvenile was interrogated "in a detention facility . . . at which he was subject to continuous supervision" and "had been physically restrained from leaving the premises immediately prior to his confession"). A trip to the principal's office for an interview is not a "formal arrest," nor does it suggest to the student that he or she faces such an arrest. It is unrealistic to expect school officials who are responsible for addressing student behavioral issues to refrain from investigating allegations of students' harming each other, and the mere fact that such officials are in positions of authority over students does not transform every interview of a student into a custodial interrogation. There is no evidence in the record that Lapan did anything other than what we would expect an assistant principal to do. See *New Jersey* v. *T.L.O.*, 469 U.S. 325, 350 (1985) (Powell, J., concurring) ("apart from education, the school has the obligation to protect pupils from mistreatment by other children").[11]

Although Ira raised the issue of voluntariness in his memorandum in support of the motion to suppress, the issue was not specifically addressed at the evidentiary hearing and the judge did not make any findings or determinations whether the juveniles' statements were voluntary. "A confession (or admission), whether made to police or to a civilian, is admissible only if it is voluntarily made." *Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991), citing *Commonwealth* v. *Allen*, 395 Mass. 448, 456 (1985). However, "[a]t a suppression hearing, there is an initial presumption that the defendant's statement is voluntary, placing the burden on the defendant to produce evidence tending to show otherwise." *Commonwealth* v. *Crawford*, 429 Mass. 60, 65 (1999), citing *Commonwealth* v. *Harris*, 371 Mass. 462, 471 n.3 (1976). The juveniles posit that the statements were

---

[11]Because we conclude that assistant principal Lapan was not required to give the juveniles Miranda warnings, it is immaterial that the juveniles were not given an opportunity to consult with their parents prior to answering questions about the alleged incident. A juvenile's opportunity to consult with an "interested adult" is relevant to the validity of the juvenile's waiver of his rights guaranteed by the Fifth Amendment to the United States Constitution. See *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 133-134 (1983).

involuntary because the juveniles were thirteen and fourteen years old, the record is devoid of evidence that the juveniles wrote their statements free of duress, they were questioned without their parents being present, they were not given Miranda warnings, they were questioned by a person in authority, and they were told that there would be "consequences" for their actions. Ira's affidavit in no way alleged that he was "intimidated or coerced or that his ability to reason was in any way impaired," *Commonwealth* v. *Snyder, supra* at 531 n.9, nor did the juveniles introduce any other evidence showing that the statements were involuntary. We will not conclude that a statement is involuntary simply because it is taken by a school official who is in a position of authority. Such an approach would invalidate, on voluntariness grounds, the results of any questioning of students and thereby would wreak havoc on our schools. Thus, based on the evidence presented at the hearing on the motions to suppress, we cannot conclude that the judge, in allowing the juveniles' motions, impliedly found that the statements were involuntary. Cf. *Commonwealth* v. *A Juvenile,* 402 Mass. 275, 280 (1988) ("implied finding that the Commonwealth" failed to meet burden of proof was warranted where "no evidence in the record" supported Commonwealth's position).

3. *Conclusion.*

For the above-stated reasons, we conclude that it was error for the judge to dismiss the complaints and to suppress the juveniles' statements. We reverse the judgments and the orders allowing the juveniles' motions to suppress, and the cases are remanded to the Juvenile Court for proceedings consistent with this opinion.

*So ordered.*