## COMMONWEALTH *vs.* CARLOS ESCALERA.[1]

No. 06-P-1097.

Hampden. September 12, 2007. - November 19, 2007.

Present: CYPHER, KANTROWITZ, & COHEN, JJ.

*Constitutional Law,* Waiver of constitutional rights by juvenile, Admissions and confessions. *Practice, Criminal,* Admissions and confessions. *Waiver. Words,* "Interested adult."

Discussion of the law regarding an "interested adult" with whom a juvenile must have a genuine opportunity for a meaningful consultation prior to police obtaining a waiver of the juvenile's Miranda rights. [730-731]
This court concluded that a foster parent is qualified to act as an "interested adult" with whom a juvenile must have a genuine opportunity for a meaningful consultation prior to police obtaining a waiver of the juvenile's Miranda rights, as long as the foster parent has a relationship with the juvenile and is sufficiently interested in the juvenile's welfare to afford the juvenile appropriate protection. [731-735]

COMPLAINTS received and sworn to in the Hampden County Division of the Juvenile Court Department on December 14, 2004.

INDICTMENT found and returned in the Superior Court Department on January 13, 2005.

The cases were tried in the Hampden County Division of the Juvenile Court Department before *Rebekah J. Crampton Kamukala,* J.

*Anne O'Reilly* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. As framed by the defendant, the issue is "[w]hether a foster parent is qualified to act as an 'interested adult' for Miranda purposes." We answer in the affirmative.

[1]The defendant's last name appears as "Escalara" in the indictment. We use the spelling contained in the earlier complaints.

*Background.* Carlos Escalera, a fifteen year old, was charged both as a youthful offender — burning a building, G. L. c. 266, § 2 — and as a delinquent — breaking and entering with intent to commit a felony, G. L. c. 266, § 18, and larceny over $250, G. L. c. 266, § 30. All three charges stem from an incident on December 8, 2004, involving the Al Baqi Islamic Center in Springfield. A year later, on December 8, 2005, a jury found Escalera delinquent on the two juvenile complaints and a youthful offender on the arson indictment.

On appeal, he argues that (1) his statements made to police during an interrogation should have been suppressed because a foster parent cannot act as an "interested adult" for purposes of a Miranda waiver; and (2) the trial judge erred in failing to conduct a voir dire hearing on the voluntariness of his statements. We affirm.

*Facts.* On December 8, 2004, the Al Baqi Islamic Center was vandalized and burned. At the time of the fire, the defendant, a juvenile, was in the custody of the Department of Social Services (DSS). He had been in foster care for six months at the time of the fire.

The defendant was one of several juveniles who were charged after the mosque was burned. On December 13, 2004, police officers interrogated the defendant at about 9:30 P.M. in a room at a fire station. The defendant's foster mother was present and was with him before and during the interrogation, which was audiotaped.

The officers read Miranda warnings to the defendant in the presence of his foster mother, and both the defendant and his foster mother signed Miranda waiver forms. Before questioning, they were allowed to consult privately.[2] After questioning began, the defendant made incriminating statements.

*Law.* "In questioning a juvenile who has attained the age of

---

[2]One of the officers told the defendant, in his foster mother's presence, "I don't know if you told [your foster mother] why you came down here or if you know, or if you have any questions. But I'm going to give a few moments. I'm going to shut the tape recorder off, and then I'll come back into here. Okay." The defendant and his foster mother were then left alone. The officer later returned and stated, "I have returned to the room, and Carlos and [his foster mother] have agreed to continue our conversation."

fourteen, the police must provide a genuine opportunity for a meaningful consultation with an interested adult prior to obtaining a Miranda waiver. . . . The adult, viewed from the perspective of the officials conducting the interview, assessed by objective standards, must have the capacity to appreciate the juvenile's situation and render advice."[3] *Commonwealth* v. *Leon L.*, 52 Mass. App. Ct. 823, 826-827 (2001) (citations omitted).

A consulting adult need not be the parent of the juvenile, *Commonwealth* v. *Alfonso A.*, 438 Mass. 372, 383 (2003), nor even be completely free of conflicting loyalties or tensions. See *Commonwealth* v. *Berry*, 410 Mass. 31, 35-36 (1991) (father can serve as interested adult despite prior night's violent confrontation with juvenile); *Commonwealth* v. *McCra*, 427 Mass. 564, 568-569 (1998) (that defendant's aunt was sister of victim did not preclude her from acting as interested adult).

Conversely, one is not an interested adult if he or she is "actually antagonistic" toward the juvenile, *Commonwealth* v. *Philip S.*, 414 Mass. 804, 809 (1993), or if there is a lack of relationship between the child and the adult, *Commonwealth* v. *Alfonso A.*, 438 Mass. at 383-384 (those present not interested adults where no showing of meaningful relationship with child), or if a substantial conflict exists, *Commonwealth* v. *A Juvenile*, 402 Mass. 275, 279-280 (1988) (employee of private organization under contract with Department of Youth Services [DYS] to run home for troubled adolescents, to which defendant had been committed, could not serve as interested adult).

*Discussion.* Here, there is no dispute that the defendant's foster mother was present, understood the nature of the Miranda rights, and had an opportunity to discuss those rights with the defendant. Accordingly, the sole issue before us is a global one: whether foster parents generally, by nature of their contractual

---

[3] "Where a juvenile over fourteen years of age does not have an opportunity to consult with a parent, adult, or attorney prior to making a statement, that circumstance by itself does not render the juvenile's inculpatory statement inadmissible. Other factors include the maturity of the juvenile for his age, his experience with police procedures, whether he or she was subjected to physical or psychological pressures, and whether he or she was kept in a noncoercive environment." *Commonwealth* v. *Leon L.*, 52 Mass. App. Ct. at 826 n.4 (citation omitted).

relationship with the State, can ever serve as interested adults.

The defendant asserts that foster parents, acting as instruments of the State, carry with them conflicting interests, such that their role as an interested adult is compromised. He cites two principal sources for support: (1) *Commonwealth* v. *A Juvenile, supra,* concerning DYS; and (2) a DSS regulation, 110 Code Mass. Regs. § 4.34(1)(a) (1993), that limits the ability of DSS to consent to police questioning of a juvenile in its charge.

Although foster parents have a contractual relationship with DSS and are not afforded many of the rights and privileges of parents or guardians, they are nevertheless tasked with providing care to children. See *Kerins* v. *Lima,* 425 Mass. 108, 112 n.6 (1997) ("Those selected to be foster parents execute a written contract with [DSS] in which they agree to furnish care to a foster child or children"). This role fits within the duties of an interested adult. Indeed, as the Commonwealth argues, it would be anomalous to hold that foster parents are prohibited from giving care and advice at a time when the child is most in need of such assistance and guidance.

Furthermore, foster parents are neither agents of the police nor involved in the criminal process, thus distinguishing their role from that of a DYS official, as described in *Commonwealth* v. *A Juvenile, supra.* In that case, the Supreme Judicial Court held that the assistant director of a private nonprofit organization under contract with DYS could not serve as an interested adult to a juvenile committed to its detention facility. *Id.* at 277-280. The court affirmed the District Court judge's determination that the assistant director was not standing in the place of a parent but instead acting as a DYS employee, with "a duty to report to the police if he learned a juvenile had committed a crime."[4] *Id.* at 278.

Unlike DYS, DSS is not part of the criminal process. Children in DSS custody are not there because they have committed a criminal offense. The function of DSS and its foster parents is to provide care and protection to children, not to detain, treat, or rehabilitate juvenile offenders. See 110 Code Mass. Regs.

---

[4]Indeed, the court held that the juvenile had been subjected to custodial interrogation when confessing to the assistant director and was entitled to Miranda warnings. *Commonwealth* v. *A Juvenile,* 402 Mass. at 277-278.

§ 1.01 (1993); 109 Code Mass. Regs. § 2.01 (1993). Foster parents provide a social service purchased by DSS to carry out its mission of "encourag[ing] family life" and "protect[ing] the right of children to sound health and normal physical and mental development." See 110 Code Mass. Regs. § 1.01. In essence, DSS helps to support parents in need of assistance or, as is the case here, provides an adequate parental substitute. This substitute role is not in conflict with the duty of an interested adult.

The defendant also cites a DSS regulation as modifying the interested adult requirement as it pertains to children in DSS custody. He claims that 110 Code Mass. Regs. § 4.34(1)(a) bars foster parents from allowing the police to question children within its care. That section provides, in relevant part: "If a child is a possible or known defendant in a criminal action, the Department [(DSS)] cannot consent to having the child interviewed irrespective of whether or not the child is considered by the Department to be mature.[5] In this situation, the Department may go to court and request the appointment of a Guardian Ad Litem with authority to determine whether the child should/will consent to participate in any kind of police interrogation." *Ibid.*

If the term "Department" encompasses foster parents, then the latter theoretically would be barred from serving as interested adults. A look at the definitions section of the regulations indicates no such relationship. Section 2.00 defines "Department" as meaning "the Department of Social Services." 110 Code Mass. Regs. § 2.00 (1996). "Foster parent" is defined as "a person approved by the Department to be a foster parent . . . ." *Ibid.* These definitions evidence an intent to define the term "Department" as not including "foster parents," of whom DSS must approve.[6]

An examination of other subsections of 110 Code Mass. Regs. § 4.34 further indicates that foster parents are not encapsulated within the meaning of the term "Department" under § 4.34(1)(a).

---

[5]Under the regulations, "[a] child who is 14 years old or older is presumed to be a mature child." 110 Code Mass. Regs. § 2.00 (1996).

[6]Further, 110 Code Mass. Regs. § 7.001 (1993), dealing with the purchasing of services by DSS, acknowledges a distinction between the DSS's "own direct service staff" and "private social service providers."

Both § 4.34(2)[7] and § 4.34(5)[8] explicitly provide for application to foster parents, while § 4.34(1)(a) does not. In § 4.34(2) and § 4.34(5), the term "Department" is followed by a parenthetical that provides "(including departmental foster parents)." The term "Department" under § 4.34(1)(a), conversely, does not include any such parenthetical. If the regulation intended foster parents to be bound by § 4.34(1)(a), it would have expressly so stated. Lastly, 110 Code Mass. Regs. § 7.102(1) (2001)[9] specifies sections of the regulations that are applicable to foster parents. Subsection 4.34(1)(a) is not included on the list.

In sum, 110 Code Mass. Regs. § 4.34(1)(a) does not apply to foster parents and does not disqualify them from serving as an interested adult.[10] As long as a foster parent has "a relationship with the juvenile [and] 'is sufficiently interested in the juvenile's welfare to afford the juvenile appropriate protection,' " *Com-*

---

[7]Under 110 Code Mass. Regs. § 4.34(2) (1993), when dealing with school permission or consent forms, "[t]he Department (*including departmental foster parents*) will exercise its clinical judgment to determine whether or not it is in the child's best interests to have the form signed, and the Department (*including departmental foster parents*) will consent or deny on that basis" (emphasis added).

[8]Section 4.34(5) of 110 Code Mass. Regs. (1993) provides: "The Department (*including departmental foster parents*) will not procure or authorize any baptism or other religious ceremony for any minor child in its custody" (emphasis added).

[9]That section provides: "110 [Code Mass. Regs. §§] 7.100 through 7.199 appl[y] to foster and pre-adoptive homes, foster and pre-adoptive parents, and foster/pre-adoptive parent applicants; as well as children placed in community residential care." 110 Code Mass. Regs. § 7.102(1).

[10]The defendant's second argument, that the trial judge should have conducted a voir dire on the issue of voluntariness, is without merit. The trial judge refused to conduct such a hearing, ruling that the issue had already been decided by the motion judge. That being the case, there was no need to conduct a second hearing on the same issue. We note that voluntariness was not a live issue at trial. See *Commonwealth* v. *Parham*, 390 Mass. 833, 841 (1984). Compare *Commonwealth* v. *Van Melkebeke*, 48 Mass. App. Ct. 364, 367 (1999). In any event, the trial judge gave the jury a humane practice instruction. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 149-152, cert. denied, 457 U.S. 1137 (1982).

While the motion judge's memorandum of decision implicitly supported the view taken by the trial judge, we, out of an abundance of caution, remanded the matter to the motion judge for specific findings, which, when supplied, indicated that the statements were, indeed, voluntarily made. That being so, the trial judge was correct in holding that a second hearing was unnecessary.

*monwealth* v. *Alfonso A.*, 438 Mass. at 383, quoting from *Commonwealth* v. *MacNeill*, 399 Mass. 71, 77-78 (1987), he or she may serve as an interested adult.

*Judgment affirmed.*

*Adjudications of delinquency affirmed.*