## COMMONWEALTH *VS.* CLARK C.,[1] a juvenile.

No. 02-P-41.

Hampden. December 13, 2002. - October 9, 2003.

Present: BECK, DREBEN, & McHUGH, JJ.

*Due Process of Law,* Police custody. *Practice, Criminal,* Voluntariness of statement, Admissions and confessions. *Constitutional Law,* Self-incrimination, Admissions and confessions. *Evidence,* Admissions and confessions. *Arrest.*

Where the juvenile was not in custody when he made a telephone call to a police officer, the telephone call did not constitute interrogation, and therefore, the fact that the officer did not give the juvenile Miranda warnings over the telephone was not grounds for suppressing the juvenile's statements made during that call. [544]

In a criminal action, a Juvenile Court judge erred in suppressing the spontaneous statement of the juvenile, where the police officer arresting the juvenile did nothing to provoke the juvenile's statement other than inform him that he was under arrest. [545]

A Juvenile Court judge properly granted the juvenile's motion to suppress statements made in response to a police officer's comment at the time of the juvenile's arrest, where the officer's remark was the functional equivalent of interrogation [545-548], requiring the administration of Miranda warnings [548-549].

INDICTMENTS found and returned in the Superior Court Department on February 15, 2001.

After transfer to the Springfield Division of the Juvenile Court Department, a pretrial motion to suppress evidence was heard by *Judith A. Locke,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to this court.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

---

[1] A pseudonym.

*Erica E. Cushna* for the juvenile.

BECK, J. A Juvenile Court judge suppressed "all statements" a juvenile made to Larry Brown, a Springfield police lieutenant. In its interlocutory appeal, see Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), the Commonwealth claims that none of the three "categories" of statements at issue here constituted custodial interrogation and therefore should not have been suppressed. We reverse the judge's findings as to the first two statements and affirm as to the third.

*Governing legal principles.* "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301 (1980). "The term 'functional equivalent' encompasses 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 512 (1989), quoting from *Rhode Island* v. *Innis*, 446 U.S. at 301. See *Commonwealth* v. *Morse*, 427 Mass. 117, 123 (1998). "[An] 'incriminating response' . . . [is] any response — whether inculpatory or exculpatory — that the *prosecution* may seek to introduce at trial." *Rhode Island* v. *Innis*, 446 U.S. at 301 n.5 (emphasis in original). "[A]nalysis under *Innis* 'turns upon the objective purpose manifested by the police.' Interrogation is present 'if an objective observer (with the same knowledge of the suspect as the police officer) would . . . infer that the [officer's speech or conduct was] designed to elicit an incriminating response.' " *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. at 512, quoting from White, Interrogation Without Questions: *Rhode Island* v. *Innis* and *United States* v. *Henry*, 78 Mich. L. Rev. 1209, 1231-1232 (1980). See *Commonwealth* v. *Sheriff*, 425 Mass. 186, 198 (1997).

In reviewing a judge's findings in ruling on a motion to suppress, we "accept[] the judge's subsidiary findings of fact absent clear error, give[] substantial deference to the judge's ultimate findings and conclusions of law, but independently review[] the correctness of the judge's application of constitutional principles to facts found." *Commonwealth* v. *Magee*, 423 Mass. 381, 384 (1996), quoting from *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995).

*Discussion.* We review the statements in chronological order, setting out the facts relevant to that statement, followed by the analysis.

1. *The telephone call.* The judge made the following undisputed findings of fact as to the first "category" of statements. On January 4, 2001, Lieutenant Brown interviewed the victim of a home invasion. As a result of that interview, the juvenile became the "focal point" of the investigation. Later that day, the lieutenant met with the juvenile's grandmother. The juvenile was not home.

Five days later, Lieutenant Brown received a telephone call at the police department assessment center from someone who identified himself as "Clark." At first, the lieutenant assumed it was a friend of his, but the caller corrected the lieutenant and identified himself as Clark C., the juvenile. The lieutenant had never spoken to the juvenile before. The lieutenant told the juvenile that he had talked to the juvenile's grandmother. The juvenile responded, "I didn't do all that lady said I did, I just hit her." The caller then asked Lieutenant Brown whether he should confess. The lieutenant declined to advise the caller, but asked the juvenile if he would turn himself in. The caller said he would call at 8:30 A.M. to be picked up or come to the assessment center the next morning. After including these facts in her findings, the judge made no further comment about the admissibility of the telephone call. Ultimately, however, she ordered that all statements the juvenile made to the lieutenant should be suppressed.

The Commonwealth argues that these statements should not have been suppressed because the juvenile was not in custody. We agree. The juvenile initiated the telephone call and was free to end the call at any time. See *Commonwealth* v. *Ryan,* 11 Mass. App. Ct. 906, 907 (1981). Indeed, even the juvenile argues only that it would have been "better practice" for the lieutenant to have given him Miranda warnings over the telephone. The judge swept too broadly when she explicitly suppressed "all statements" (although without specific comment about the telephone call). The telephone call did not constitute custodial interrogation. It should not have been suppressed on Miranda grounds.

2. *Service of the arrest warrant.* The second and third statements occurred the next day. When the juvenile did not call the lieutenant or appear at the assessment center the next morning, the lieutenant went to the juvenile's home around 10:30 A.M. with an arrest warrant he had apparently obtained some days before. A woman answered the door. According to Lieutenant Brown's testimony, she was either the juvenile's aunt or older sister. After the lieutenant identified himself and said he had an arrest warrant for the juvenile, the woman acknowledged that the juvenile was there and led the police to the juvenile's bedroom where he was still sleeping. The lieutenant woke the juvenile, told him he had a warrant for his arrest, and instructed the juvenile to get up, get dressed, and come with him. The juvenile responded to this instruction by asking, "[D]id my grandmother turn me in?"

The Commonwealth argues that this statement was spontaneous because it was not made in response to interrogation. Again we agree. See *Commonwealth* v. *Gittens*, 55 Mass. App. Ct. 148, 150 (2002). The lieutenant did nothing to provoke the juvenile's question other than inform him that he was under arrest. See *Rhode Island* v. *Innis*, 446 U.S. at 301 (1980) (Miranda warnings requirement does not apply to words or actions of police normally attendant to arrest and custody); *Commonwealth* v. *King*, 17 Mass. App. Ct. 602, 608-609 (1984) (same; nothing about a request to see an arrest warrant again should have alerted officers that the defendant might make an incriminating statement).

3. *Officer's answer to juvenile's question.* In response to the juvenile's question as to whether his grandmother had turned him in, the lieutenant replied, "No." The judge further found that the lieutenant told the juvenile, "You said you were going to turn yourself in yesterday when I spoke to you, you said you were going to turn yourself in at 8:00 in the morning." The juvenile then stated that he was afraid because he had had "a previous bad experience with police officers." There is no dispute that having been informed of the warrant for his arrest and told to accompany the lieutenant, the juvenile was in custody when he made this statement. The issue then, as the judge correctly pointed out, is whether the lieutenant's com-

ment and the juvenile's response constituted interrogation or its functional equivalent, requiring Miranda warnings. See *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. at 511-512, citing *Rhode Island* v. *Innis*, 446 U.S. at 300-301.

The judge's findings on this point are somewhat difficult to follow. At the hearing on the juvenile's motion to suppress, counsel for the juvenile established that the lieutenant had never spoken to the juvenile prior to the telephone call the day before the arrest, and that "the only reason why [the lieutenant] thought [the caller was the juvenile] was because the individual identified himself as [Clark C.]." Continuing with cross-examination, counsel asked the lieutenant about the lieutenant's conversation with the juvenile on the day of the arrest regarding the telephone call the day before, and the juvenile's statement in that call that he would turn himself in. Counsel asked the lieutenant, "[D]idn't you think that [your comment would lead the juvenile to] corroborate the phone call?" The lieutenant denied that his remark to the juvenile was a question, and said that it was "a form of a statement." In an effort to establish that the lieutenant was attempting to insure the admissibility of the telephone call, counsel then asked the lieutenant, "[T]he statement that you made[] directly supports the phone call that you had the day before, is that right?" While continuing to deny that such was his intent, the lieutenant acknowledged that "[i]t could be interpreted like that."

In her subsequent findings and order, the judge adopted the correct legal standard — that the " 'functional equivalent' test turns on whether the officer's statements and conduct would be perceived as an interrogation by a reasonable person in the same circumstances." See *Commonwealth* v. *Sheriff*, 425 Mass. at 198 ("in order to determine whether a suspect has been subjected to custodial interrogation, the primary focus is on the suspect's perceptions rather than the police officer's intent"). See also *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. at 512; *United States* v. *Taylor*, 985 F.2d 3, 7 (1st Cir.), cert. denied, 508 U.S. 944 (1993). Taking into account all of the circumstances, including the fact that Clark C. was a juvenile, the judge found that the lieutenant's statement "was reasonably likely to elicit an incriminating response . . . . The officer,

consciously or unconsciously, attempted to verify a voice that he heard, but did not recognize, on the phone the previous day." The judge further found that "[the lieutenant's] topic was the information necessary to substantiate [the] earlier phone call for evidentiary purposes."

Although the judge set out these rulings in her conclusions of law, they were findings of fact. See Smith, Criminal Practice & Procedure § 1948, at 287 (2d ed. 1983) (a finding is a finding of fact "if it calls for the application of the reasoning powers of the Judge as to the facts or involves weighing of evidence"). See also *Gauvin* v. *Clark*, 404 Mass. 450, 453 n.4 (1989) (what a reasonable person should know is a question of fact). The judge's findings were not clearly erroneous. We therefore defer to her subsequent conclusion that the lieutenant's remark was the functional equivalent of "express question[ing]."

The Commonwealth argues that the lieutenant's comment was not an attempt to confirm that it was the juvenile who made the telephone call because there was no need for such a confirmation. Lieutenant Brown testified that he recognized the juvenile's voice when the juvenile asked whether his grandmother had turned him in. According to the Commonwealth, that voice recognition plus the circumstantial evidence that the person on the telephone was the juvenile was sufficient to authenticate the telephone call. See Liacos, Brodin & Avery, Massachusetts Evidence § 12.4, at 743 (7th ed. 1999). The Commonwealth contends that since no additional authentication was necessary, it was "clearly erroneous" for the judge to conclude that the lieutenant's "answer to the juvenile's question constituted the functional equivalent of interrogation." The Commonwealth also contends that the judge's failure to make an explicit finding that the lieutenant recognized the juvenile's voice was clearly erroneous. We disagree with this analysis.

That the Commonwealth might successfully introduce the statements the juvenile made during the telephone call without his later statement essentially confirming that it was he who made the call, does not change the status of that later statement. The later statement would likely ensure the introduction of the telephone call and thus clearly strengthen the Commonwealth's case. The juvenile's explanation of why he did not carry through

on the arrangement he made with Lieutenant Brown on the telephone was an " 'incriminating response' . . . by an accused . . . which [could] be used at trial to help prove [his] guilt." *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. at 513, citing *Rhode Island* v. *Innis*, 446 U.S. at 301 n.5. The judge heard the testimony, and her conclusion that the lieutenant's statement eliciting the juvenile's response was the functional equivalent of custodial interrogation is "binding in the absence of clear error." *Commonwealth* v. *Cao*, 419 Mass. 383, 384, cert. denied, 515 U.S. 1146 (1995), quoting from *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980).

This case is distinguishable from *Commonwealth* v. *Figueroa*, 56 Mass. App. Ct. 641. (2002), in which we recently affirmed a Superior Court judge's denial of a defendant's motion to suppress on somewhat similar facts. In *Figueroa*, the defendant, who was not a juvenile, maintained a "congenial conversation" with police while being driven from New York to Massachusetts. *Id.* at 644. The trial judge found that it was the defendant who initiated the conversation and asked the questions to which the police only responded. *Id.* at 645. (The Commonwealth did not attempt to introduce at trial any statements concerning the defendant's whereabouts while a fugitive.)

In the case before us, while it was the recently awakened juvenile who asked the question about his grandmother, the lieutenant did more than answer the juvenile's question in the negative. He went on to raise the issue of the arrangements made in the telephone call. Although the lieutenant testified that he was trying to protect the grandmother, the judge was not required to credit this testimony. See *Commonwealth* v. *Franklin*, 376 Mass. 885, 898 (1978) (credibility of witnesses' testimony is within the province of the trier of fact even when the proof offered is in support of a constitutional claim and the evidence is uncontradicted). Moreover, it is not the officer's professed purpose in making the remark that controls, but rather the perception of an objective observer. See *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. at 512.

4. *Voluntariness of juvenile's statement.* Since the judge did not err in determining that the lieutenant's remark was in effect a question, the safeguards of *Miranda* v. *Arizona*, 384 U.S. 436

(1966), were required. See *In re Gault*, 387 U.S. 1, 55 (1967). No Miranda warnings were given. In their absence, we need not consider whether the juvenile's statements were otherwise voluntary. In any case, on these facts, the Commonwealth could not sustain its heavy burden. See *Commonwealth* v. *Mark M.*, *ante* 86, 89 & n.3 (2003). The juvenile's statement explaining his failure to turn himself in was therefore correctly suppressed.

5. *Conclusion.* The judge's order as applied to the juvenile's statements on the telephone and to his question the next morning asking whether his grandmother turned him in is reversed. Those statements should not have been suppressed on Miranda grounds. We express no opinion as to whether there may be other grounds for objection to the admission of the first two statements. The judge's order suppressing the statement of explanation for the juvenile's failure to turn himself in is affirmed. That statement may not be introduced.

*So ordered.*