## COMMONWEALTH vs. KEITH WINFIELD.

No. 09-P-661.

Middlesex. February 5, 2010. - May 14, 2010.

Present: RAPOZA, C.J., McHUGH, & GRAHAM, JJ.

*Rape. Practice, Criminal,* Required finding, Redaction. *Evidence,* Motive, Relevancy and materiality, Hearsay, Verbal completeness, Photograph, Bias, Impeachment of credibility, Cross-examination.

At the trial of indictments charging the defendant with forcible rape of a child under sixteen, indecent assault and battery of a child under fourteen, and assault and battery of a child causing serious bodily injury, the judge did not err in denying the defendant's motion for required findings of not guilty at the close of the Commonwealth's case, where the circumstantial evidence, viewed in the light most favorable to the Commonwealth, permitted a rational trier of fact to find that the defendant, and not his wife, had committed the criminal acts on the child in their care. [720-723]

At a criminal trial, the judge did not err in permitting redaction of the defendant's taped statement to the police, where the redacted portions, which neither explained nor qualified the part of the interview introduced by the Commonwealth, constituted self-serving, totem pole hearsay. [723-725]

At the trial of indictments charging the defendant with forcible rape of a child under sixteen, indecent assault and battery of a child under fourteen, and assault and battery of a child causing serious bodily injury, the judge did not abuse his discretion in admitting photographic evidence of the victim's injuries, where the contested photographs of burns and bruises were probative of issues such as penetration, force, intent, and opportunity, and where the judge, in his instructions to the jury, cautioned them against placing undue weight on the photographs. [725-726]

At the trial of indictments charging the defendant with forcible rape of a child under sixteen, indecent assault and battery of a child under fourteen, and assault and battery of a child causing serious bodily injury, the judge did not err in refusing to permit the defendant (the victim's uncle) to impeach the victim's mother with her pending criminal charges, where the circumstances did not demonstrate that the mother's testimony at trial was motivated by a desire to obtain from the Commonwealth favorable treatment regarding the charges against her. [726-727]

INDICTMENTS found and returned in the Superior Court Department on August 1, 2006.

The cases were tried before *Patrick J. Riley*, J.

*Robert L. Sheketoff* for the defendant.

*Marguerite T. Grant*, Assistant District Attorney (*Beth M. Merachnik*, Assistant District Attorney, with her) for the Commonwealth.

GRAHAM, J. On November 15, 2007, a jury convicted the defendant, Keith Winfield, of the forcible rape of a child under sixteen (two counts), indecent assault and battery of a child under fourteen, and assault and battery of a child causing serious bodily injury. On appeal, he argues that the judge erred by (1) denying his motion for required findings of not guilty at the close of the Commonwealth's case; (2) permitting in evidence inflammatory photographs of the victim's injuries; (3) permitting redaction of a portion of the defendant's taped statement to the police; and (4) refusing to permit the defendant to impeach the victim's mother (mother) for bias on her pending criminal charges. We find no merit to these claims and, accordingly, affirm the judgments.

1. *Facts*. We summarize the evidence in the light most favorable to the Commonwealth, reserving further details for the discussion of specific issues below. The victim was born in 2003. The mother's sister was married to the defendant. For about six months, in early 2004, the mother babysat the defendant's older daughter, who was about two years older than the victim, while the defendant's wife was working. The victim and the mother lived with the mother's parents (grandmother and grandfather) in Tewksbury.

In September, 2005, the mother began looking for a job. The grandmother and grandfather both worked from 6:30 A.M. to 2:30 P.M. When the mother went on a job interview, she left the victim with the defendant's wife. At that time the defendant and his wife had two daughters, four years old and eight months old. The defendant and his family lived on the first floor of a two-family home in Melrose, with the defendant's father and brother living in the upstairs unit.

On October 10, 2005, the mother began a job as a radiology assistant in Burlington. She arranged to have the defendant's wife provide daycare for the victim beginning on October 11, 2005, for $150 per week. The mother was to drop off the victim

at the defendant's home on her way to work in the morning, and the grandmother was to pick up the victim at 3:00 P.M. On Tuesday, October 11, 2005, after work, the mother found bruises on the victim's arms and legs, and the following day, after work, she noticed bruises on the victim's face, arms, and abdomen. The mother called the defendant's wife to inquire about the bruises, but both she and the defendant, who was on leave from his job at the time, denied any knowledge of the bruises.

On the morning of Thursday, October 13, 2005, the mother dropped off the victim at the defendant's home, then went to work. Prior to taking the victim to the defendant's home, the mother changed the victim's diaper. She noticed nothing of concern to her in the victim's genital or anal area, and the victim was not in any pain.

That day the mother called the defendant's home from work four times. The first time was at 12:40 P.M., but the telephone was not answered. She called a second time, at 12:55 P.M., and the defendant answered. When the mother asked where his wife was, he informed her that his wife had gone to get coffee and would be home soon. Asked where the victim was, the defendant replied that she was in front of him playing with his younger daughter and a toy. The mother asked to speak to the victim, and the defendant stated he was putting the victim on the telephone. The mother then spoke into the telephone for several minutes, but received no response, which, she testified, was unusual. The third time the mother called the line was busy. Her final call to the defendant's home that day was at 1:17 P.M., and the defendant answered the telephone. When the mother asked the defendant if the victim was okay since she had not talked on the telephone earlier, the defendant assured her that the victim was fine.

When the grandmother came to pick up the victim that afternoon, the defendant and his wife were both at home and the victim was sleeping. After a few minutes, the victim awoke and ran to the grandmother, crying. As they went to the car, the grandmother tried to get the victim to walk, but she refused, and continued to cry. The victim continued to cry all the way to Tewksbury. Once inside the house, the grandmother changed the victim's diaper, and noticed that her vaginal area was red and puffy.

That evening, at approximately 6:30 P.M., the mother returned home from work. She changed the victim's diaper twice; at 8:30 P.M. and again at 11:00 P.M. At the 8:30 change, the victim cried and appeared to be in pain. Her vaginal and anal areas were very red. The victim continued to cry and eventually was put to bed, asleep, at 9:00 P.M. At the 11:00 P.M. diaper change, the mother noticed that the victim's genital and anal area was bleeding and the skin in that area was peeling. The victim cried during the change, but soon fell asleep, so the mother let her sleep.

On the morning of Friday, October 14, 2005, the mother took the victim to a medical office in Somerville where she was seen by Dr. Carole Allen, the director of pediatrics. The victim's vaginal area was blistered, her anal area was red, and the victim was in pain. After consulting with the victim's primary care physician, Dr. Allen formed the opinion that the victim had been raped. At Dr. Allen's suggestion, the mother took the victim to Children's Hospital, where she was admitted at 11:20 A.M.

The victim was seen at approximately 10:30 P.M. that evening by a team of physicians, including Dr. Alice Newton, medical director of the child protection team at Children's Hospital. The team examined and photographed the victim. There were second and third degree burns to the victim's genitals and anus. The victim's labia majora and the structure inside it were red and blistered. A second burned area, red, blistered, and peeling, covered about a five-centimeter area all around the anus and extended up inside it. Internal examination revealed a circular burn extending almost an inch inside the anus, as well as three tears from stretching of the anal tissue, indicating impalement by a hot instrument. In addition, there were bruises on her left jaw, the right side of her face, behind her ear, the left back area of her head at the hairline, her right nipple, and her back.

A CAT scan of the victim, taken on October 15, 2005, at 1:00 P.M., revealed a large skull fracture on the back left side of the victim's head, with bleeding nearby around her brain. The victim was later transferred to Shriners Burns Hospital, where she remained for one month receiving treatment.

Meanwhile, on the evening of October 14, 2005, Department of Children and Families (department) emergency response worker Kimberly Ross and Melrose police Detective David Roy

went to the defendant's home to conduct a check on his children. The defendant was at work, but met the following day with Ross and Melrose police Detective Mark Antonangeli at his home. Accompanied by his wife, the defendant stated that he was home October 11-13, 2005, while his wife was babysitting the victim, and that he and his wife were the only caretakers of the victim on those days. He further stated that he changed the victim's diaper once, on October 13. As he changed the diaper, he noticed that her vaginal area was swollen, and called his wife to look at it. They concluded, he claimed, that the victim had a bad diaper rash.[1]

On November 7, 2005, the defendant, accompanied by counsel, went to the Melrose police station, waived his Miranda rights, and was interviewed by police. During the interview, the defendant stated that on October 13, 2005, he was at home, there were no visitors at the home, his father and brother were at work, and he was alone with the victim and his eight month old daughter for forty-five minutes to an hour in the middle of the day. He further stated that his understanding of the victim's injuries, as of October 17 or 18, was that she had a head injury, a wrist injury, and a diaper rash. He claimed that the victim had no visible injuries when she left his house. The defendant also stated that he did not get along with the victim's mother, that he thought the victim's mother stole money from his house, and that he "would have never, ever, ever, ever wanted to take on another child."

2. *Motion for a required findings of not guilty.* At trial, the defendant, through cross-examination of prosecution witnesses, suggested that someone other than the defendant could have raped the victim and, since no seminal fluid or sperm was found, the perpetrator could have been a woman. In his closing argument, defense counsel argued that the defendant's wife was with the victim far longer than the defendant, and that the evidence

---

[1] When questioned about the victim's bruises, the defendant informed Ross and Antonangeli that he was aware of two incidents that might have caused bruises to the victim. The victim, he said, fell off a swing the previous month and as he tried to catch her, the swing struck her in the mouth, causing her to suffer a swollen lip. The defendant also stated that on October 13, 2005, after he put the victim in his bedroom to watch television, he heard her crying. On inspection, he found her on the floor, and assumed that she had fallen off the bed.

suggested that the victim was burned prior to the time she was alone with the defendant and his eight month old daughter. Therefore, he argues, no rational trier of fact could conclude, beyond a reasonable doubt, that the defendant, rather than his wife, committed the offenses charged.

In reviewing the denial of a motion for a required finding, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). The issue is whether the evidence, including reasonable inferences from that evidence, is sufficient to permit a rational jury to find beyond a reasonable doubt that the defendant committed the crime. See *Commonwealth* v. *Rojas*, 388 Mass. 626, 629 (1983).

"In order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime." *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965), quoting from *Commonwealth* v. *Leach*, 156 Mass. 99, 101-102 (1892). However, it is "well established 'that if, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise and has no solid foundation in established facts, a verdict of guilty cannot stand.' " *Commonwealth* v. *Fancy*, *supra*, quoting from *Commonwealth* v. *O'Brien*, 305 Mass. 393, 401 (1940). "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *Smith*, 342 Mass. 180, 183 (1961), quoting from *Commonwealth* v. *Carter*, 306 Mass. 141, 147 (1940).

Circumstantial "evidence is competent to establish guilt beyond a reasonable doubt," *Commonwealth* v. *Nadworny*, 396 Mass. 342, 354 (1985), cert. denied, 477 U.S. 904 (1986), and an inference drawn from circumstantial evidence "need only be reasonable and possible; it need not be necessary or inescapable." *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). "The Government . . . need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Com-*

*monwealth* v. *Merola,* 405 Mass. 529, 533 (1989), quoting from *United States* v. *Systems Architects, Inc.,* 757 F.2d 373, 377 (1st Cir.), cert. denied, 474 U.S. 847 (1985).

The main evidence presented against the defendant was the medical evidence and the defendant's recorded police interview. From the medical evidence, the jury could have concluded that the burns and skull fracture of the victim were inflicted shortly after midday on October 13, 2005, and that the victim would have cried aloud as she suffered the injuries. The jury could also infer that, because the victim would have cried aloud, the injuries were inflicted at a time when no one was around to hear the victim's cries. Moreover, from the defendant's prior recorded statements to the police, the jury were aware that, on the day the injuries were inflicted, the defendant was at home during midday with only the victim and his eight month old daughter. Therefore, the defendant was the only adult who had access to the victim during the time span in which the injuries occurred.

In addition to having access to the victim, the defendant had the means to commit the crimes. In the bathroom of the defendant's home was a small curling iron. After viewing photographs of the victim's injuries, the jury could find that the pattern of the burns to the victim's anus were consistent with having been inflicted by a hot instrument the same shape and size of a small curling iron.

Finally, the jury could consider the fact that the defendant, and not his wife, had expressed displeasure over the presence of the victim in his home. In his recorded interview, the defendant stated that he never wanted his wife to care for the victim. While such evidence is insufficient to establish motive, the jury could infer the defendant's hostility toward the victim, which is relevant to motive.[2] There was no evidence that such hostility was shared by his wife.[3]

---

[2]"Although motive is not an essential element of a crime, and proof of it is not required, evidence tending to show motive is always competent." *Commonwealth* v. *Brown,* 376 Mass. 156, 164 (1978), quoting from *Commonwealth* v. *Johnson,* 352 Mass. 311, 320-321, cert. granted, 389 U.S. 816 (1967), cert. dismissed, 390 U.S. 511 (1968).

[3]The defendant argues that because his wife did not testify, her attitude about taking on the victim's daycare is not part of the record. However, the jury could infer that the wife agreed to do so in order to permit her sister to obtain gainful employment.

Accordingly, we reject the defendant's argument that the line of cases beginning with *Berry* v. *Commonwealth*, 393 Mass. 793 (1985), and including *Commonwealth* v. *Salemme*, 395 Mass. 594 (1985), should govern this case. In those cases, two people had equal opportunity to inflict fatal injuries to the victim; therefore, the court held that the defendant's guilt was not adequately established in either case. See *Commonwealth* v. *Fancy*, 349 Mass. at 200 ("When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof"). Contrast *Commonwealth* v. *Merola*, 405 Mass. at 535 (jury could conclude no one had equal opportunity with the defendant to inflict the fatal injury).

In sum, the judge correctly ruled that the evidence, viewed in the light most favorable to the Commonwealth, permitted a rational trier of fact to find the defendant guilty of the indictments.

3. *Redaction of hearsay in defendant's statement to police.* During the trial, a redacted version of the defendant's interview at the police station was played for the jury. In that interview, the defendant said that, after his wife came home on October 13, 2005, and at her request, he changed the victim's diaper. That was the only time he changed her diaper. Furthermore, he noticed that the victim's vaginal area was red, so he put ointment on the area. Redacted from the interview, over the objection of the defendant, were comments made by the defendant to the police that his wife told him that the victim's mother said she had not changed the victim's diaper before bringing her to the defendant's house that morning.[4] In the interview, the defend-

---

[4]The unredacted transcript of the defendant's interview with the police contains the following exchange:

DEFENDANT: "[My wife's] like, '[the victim's] got a diaper rash.' [My wife's] like, '[the victim's mother] brought her over this morning and didn't change her and she had poop in there from last night.' "

DETECTIVE: "Throw that by me one more time."

DEFENDANT: "She said that when her sister brought her over that morning she said, 'I didn't change her.' So she had a diaper rash from the night — sitting in shit, basically. And I changed and put some cream on her and spread the cream on and that was it."

ant stated that his wife informed him that the victim's mother said the victim's diaper had not been changed all night.

The comment, allegedly made by the victim's mother, was redacted as self-serving, totem pole hearsay, and therefore inadmissible.[5] The defendant argues that the portion of the statement alleged to have been made by the mother should have been admitted under the doctrine of completeness to prevent the prosecution from presenting a fragmented and misleading version of events to the jury.

We disagree. "When a party introduces a portion of a statement or writing in evidence the doctrine of verbal completeness allows admission of other relevant portions of the same statement or writing which serve to 'clarify the context' of the admitted portion." *Commonwealth* v. *Carmona*, 428 Mass. 268, 272 (1998), quoting from *Commonwealth* v. *Robles*, 423 Mass. 62, 69 (1996). However, it does not open the gate for admission of everything in a document or statement. See *Commonwealth* v. *Kartell*, 58 Mass. App. Ct. 428, 433 n.2 (2003). The doctrine permits an opposing party to add what has been omitted to give context to the statement. "The portion of the statement sought to be introduced must 'qualify or explain the segment' previously introduced." *Commonwealth* v. *Richardson*, 59 Mass. App. Ct. 94, 99 (2003), quoting from *Commonwealth* v. *Leftwich*, 430 Mass. 865, 872 (2000). See Mass. G. Evid. § 106(a) (2010).

None of the redacted portions of the defendant's recorded interview with the police explains or qualifies the part of the interview introduced by the Commonwealth, and since all are out-of-court statements offered for their truth, those statements must be excluded as hearsay. *Commonwealth* v. *Eugene*, 438 Mass. 343, 350 (2003).

The jury did hear that portion of the defendant's recorded interview in which he stated that his wife said she changed the victim's soiled diaper that morning. The excised portion of the statement related only to the mother's alleged statement that she did not change the victim's diaper in the morning. The defend-

---

[5]The judge stated that a statutory prohibition would preclude admission of a private conversation between spouses, apparently meaning the marital disqualification. G. L. c. 233, § 20, First. That section, however, does not apply in child abuse cases. See *Commonwealth* v. *Burnham*, 451 Mass. 517, 520-523 (2008).

ant's entire statement is not rendered admissible simply because the prosecutor offered part of the statement that constituted an admission. See *Commonwealth* v. *Watson*, 377 Mass. 814, 833 (1979) (defendant not permitted "to make a statement containing an admission and then load it with any amount of self-serving statements and thereby effectively preclude the introduction of the admission in evidence without automatically rendering all of the self-serving statements admissible at his own option").

4. *Photographic evidence of the victim's injuries.* Prior to trial, the defendant filed a motion in limine to exclude eight color photographs of the victim from evidence since the only issue at trial was who committed the crime, not the victim's injuries. Consequently, he argues, the judge abused his discretion in allowing the photographs in evidence because they were of marginal value, but had significant prejudicial effect. See *Commonwealth* v. *Lewin (No. 2)*, 407 Mass. 629, 631 (1990); Mass. G. Evid. § 403 (2010).

"The admissibility of photographic evidence is left to the discretion of the trial judge, and we will overturn the judge's decision only where a defendant is able to bear the heavy burden of demonstrating an abuse of that discretion." *Commonwealth* v. *Waters*, 399 Mass. 708, 715 (1987). "[I]f the photographs possess evidential value on a material matter, they 'are not rendered inadmissible solely because they are gruesome or may have an inflammatory effect on the jury.' " *Commonwealth* v. *Benson*, 419 Mass. 114, 118 (1994), quoting from *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990). Nor may a party preclude the admission of relevant photographs by agreeing to stipulate to the fact the offered evidence tends to prove. See *Commonwealth* v. *Nadworny*, 396 Mass. at 367.

The contested photographs of burns and bruises of the victim were probative of issues including penetration, force, intent, and opportunity. See *Commonwealth* v. *Alammani*, 439 Mass. 605, 612 (2003) (photographs of two month old victim relevant to severity of injuries and "intent with which they may been inflicted"). Moreover, the chance that the jury might place improper weight on the photographs was palliated by the judge's instructions at the time the photographs were admitted,[6] and by

---

[6]When the prosecutor introduced the photographs of the injuries of the

his instruction in his final charge. In his jury instruction, the judge cautioned the jury that "it would be improper to allow your emotions to override your judgment in evaluating all the evidence calmly and dispassionately without sympathy or bias. . . . You should view the photographs only as they draw attention to clinical medical status or to the nature and extent of the victim's injuries." We find no abuse of the judge's discretion in admitting the photographs.

5. *Pending charges against victim's mother.* After the defendant was indicted on the current charges, a complaint issued charging the mother with twenty-five counts of uttering a false prescription for a controlled substance. At his trial, the defendant sought to question the mother about the pending complaint to show that she was biased and motivated to cooperate with the police in order to gain favorable treatment of the charges then pending against her. See *Davis* v. *Alaska,* 415 U.S. 308, 320 (1974); *Commonwealth* v. *Henson,* 394 Mass. 584, 587 (1985) (prosecution witness's hope for favorable treatment on a pending criminal charge enough to justify inquiry concerning bias). In addition, he contends that the mother was susceptible to official pressure from the moment she was first interviewed by the authorities because the victim had pre-existing rib and wrist fractures.[7]

"Arrest or indictment alone is insufficient for general impeachment purposes." *Commonwealth* v. *Haywood,* 377 Mass. 755, 759 (1979). See G. L. c. 233, § 21. However, "[a] defendant has the right to bring to the jury's attention any 'circumstance which may materially affect' the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate.' " *Commonwealth* v. *Haywood,* 377 Mass. at 760, quoting from *Commonwealth* v. *Marcellino,*

victim's genitals, the judge warned the jury: "I do want to give a cautionary instruction to the jurors at this time. . . . You are to view these photographs in an objective and scientific fashion as pieces of evidence, and you should not be looking at these photographs from an emotional perspective but from jurors who are evaluating the evidence in the case."

[7]Shortly after the victim's injuries, the department took custody of the victim and placed her in foster care while it conducted an investigation. General Laws c. 119, § 51B(c), required the department to take the victim into immediate temporary custody during the initial determination of her safety. Thereafter, the mother regained custody.

271 Mass. 325, 327 (1930). See Brodin & Avery, Massachusetts Evidence § 6.16.3, at 363 (8th ed. 2007).

We are not persuaded that the judge erred in refusing to permit the defendant to impeach the mother with her pending criminal charges. The judge allowed the defendant to conduct a voir dire of the mother to determine whether there was evidence that her expected testimony was motivated by partiality for the Commonwealth or hostility against the defendant. The voir dire failed to show bias on the part of the mother against the defendant. Nor did the evidence establish that the mother had changed her story once she became susceptible to the pressure of her own charges. Her drug complaint was issued in April, 2007, eighteen months after these crimes were committed. At the time the drug complaint was issued she had given statements about these crimes to the police and the department, and had testified before the grand jury. On this record, the defendant has not shown that the mother's trial testimony differed from those pretrial statements. Thus, we conclude the judge ruled correctly that the criminal complaint was not probative of bias, and therefore not appropriate for cross-examination.

*Judgments affirmed.*