DITKOFF, J.
*157 *546 The defendant, Eliezer Quinones, appeals from Juvenile Court adjudications as a youthful offender on charges of armed assault with the intent to murder, G. L. c. 265, § 18 (b ), and assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b ). We conclude that, for Miranda purposes, a juvenile's age must be considered in determining whether the juvenile was subjected to the functional equivalent of police questioning. Concluding that the police officer's advice to the defendant would not be perceived as interrogation by a reasonable juvenile of the defendant's age in the same circumstances, we determine that the judge properly denied a portion of the defendant's motion to suppress. Further concluding that there was sufficient evidence to find that the defendant was the shooter and that he had the requisite intent to murder, we affirm the adjudications.
1. Background. On the evening of July 21, 2015, the victim was shot in the leg while walking down the driveway of his friend's house in Lynn. He did not see the shooter. A witness from the neighborhood, who watched the scene unfold from the porch of his home, "[s]aw a kid ride up on a bike, drop the bike and pull a gun out." The individual disappeared behind a building, and the witness heard gunshots. The witness was unable to see the individual's face, but he described him as average build, shirtless, and riding a small, green bicycle.
Surveillance video footage (video) from a nearby convenience store revealed an individual whom the jury could have identified as the defendant riding his bicycle past the convenience store. That individual, wearing a black shirt, gray shorts, white socks, and black shoes, rode out of the video frame. Less than two minutes later, an individual wearing the same shoes, socks, and shorts emerged biking in the opposite direction. He appeared to have a black shirt tied around his head, covering his face. He rode his bicycle across the street, in the direction of the driveway where the victim was shot. At the base of the driveway, the individual dropped his bicycle on the ground and briefly disappeared out of the video frame. Seconds later, the individual reappeared and ran away, but returned again to retrieve the bicycle.
After promptly arriving at the scene of the shooting, several police officers began searching the surrounding area. On Chase *158 Street, the officers found the defendant, who was sixteen years old at the time, and another male inside a vehicle with the rear window "fogged up." The defendant was lying down "in the backseat of the car, kind of crunched down." He was wearing gray shorts underneath blue jeans, a black shirt, and black shoes. A bicycle was on the ground near the vehicle.
The officers asked the defendant and the other male what they were doing and where the owner of the vehicle was, and they stated that they knew the owner but that he was not there. After an officer confirmed with the owner of the vehicle that the defendant and the other male were not authorized to be in it, police arrested both of them and brought them to the Lynn police station for booking. The defendant was neither questioned further nor read his Miranda rights.
After spending over one hour at the police station in booking, the defendant was transported to an alternative lockup in Lowell. Before leaving the station, the defendant asked the transporting officer why he was being locked up. The officer answered and gave the defendant advice about "the negative things that the streets *547 bring to people." The officer advised the defendant to "clean up his act," as otherwise "he's going to wind up in serious trouble." The defendant said "something in the lines of people are going to feel sorry when he comes out, relating t[hat] he had been proving himself." The officer then advised the defendant "to just get out completely. There's nothing positive about the life path that he had chosen." The officer did not ask the defendant what he meant by his statements.
The motion judge granted the portion of the defendant's motion to suppress related to his statements made at the vehicle prior to his arrest, but the judge denied so much of the motion as sought to suppress the statements the defendant made during transport to Lowell. Although the Commonwealth conceded that the defendant was in custody at the time of the transport, the motion judge found that the defendant's statements were not made in response to interrogation or the functional equivalent of interrogation.
At trial, the defendant's statements made during transport were admitted in evidence. Ultimately, a jury adjudicated the defendant as a youthful offender on both indictments, and he was sentenced to two concurrent terms in State prison. This appeal followed.
2. Motion to suppress statements. a. Standard of review. In reviewing the denial of a motion to suppress, we "accept[ ] the judge's subsidiary findings of fact absent clear error, give[ ] substantial *159 deference to the judge's ultimate findings and conclusions of law, but independently review[ ] the correctness of the judge's application of constitutional principles to the facts found." Commonwealth v. Lujan, 93 Mass. App. Ct. 95, 100, 99 N.E.3d 806 (2018), quoting Commonwealth v. Magee, 423 Mass. 381, 384, 668 N.E.2d 339 (1996). Accord Commonwealth v. Martin, 467 Mass. 291, 301, 4 N.E.3d 1236 (2014).
b. Custodial interrogation. "Statements obtained as a result of custodial interrogation absent appropriate Miranda warnings ordinarily are inadmissible at trial." Martin, 467 Mass. at 308, 4 N.E.3d 1236.[1] "Custodial interrogation occurs when a defendant is subject to 'express questioning or its functional equivalent.' " Id., quoting Rhode Island v. Innis, 446 U.S. 291, 300-301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The "functional equivalent" of express questioning means "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Commonwealth v. Sanchez, 476 Mass. 725, 738-739, 73 N.E.3d 246 (2017), quoting Innis, supra. See Commonwealth v. Larkin, 429 Mass. 426, 429, 431 n.4, 708 N.E.2d 674 (1999) (officer's advice to defendant to "get the matter off his chest by making a statement" was functional equivalent of interrogation). The functional equivalence test requires "an objective assessment as to whether the police statements and conduct would be perceived as interrogation by a reasonable person in the same circumstances." Commonwealth v. Gonzalez, 465 Mass. 672, 675-676, 991 N.E.2d 1036 (2013), quoting Commonwealth v. Torres, 424 Mass. 792, 797, 678 N.E.2d 847 (1997). The subjective intent of the officer has no impact on this analysis. See Commonwealth v. Weaver, 474 Mass. 787, 799, 54 N.E.3d 495 (2016), quoting *548 Commonwealth v. Sneed, 440 Mass. 216, 220, 796 N.E.2d 1284 (2003) ("Whether an interrogation is custodial depends on the 'objective circumstances of the interrogation, and not on the subjective views of either the interrogating officers or the person being questioned' ").
Before applying the test, however, we examine whether to consider how the police statements would be perceived by a reasonable person in the abstract or by a reasonable juvenile of the defendant's age. In doing so, we are guided by J.D.B. v. North Carolina, 564 U.S. 261, 277, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), in which the United States Supreme Court held that a child's age must be considered as a factor in determining whether the child was in custody for Miranda *160 purposes.
In reaching this conclusion, the Supreme Court reasoned that, "even where a 'reasonable person' standard otherwise applies, the common law has reflected the reality that children are not adults." J.D.B., 564 U.S. at 274, 131 S.Ct. 2394. Likewise, we recognize this reality in the context of interrogation. See In re S.W., 124 A.3d 89, 104 (D.C. 2015) (emphasizing role of juvenile status in custodial interrogation). "A child's age is far 'more than a chronological fact.' " J.D.B., supra at 272, 131 S.Ct. 2394, quoting Eddings v. Oklahoma, 455 U.S. 104, 115, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Instead, "[i]t is a fact that 'generates commonsense conclusions about behavior and perception.' " J.D.B., supra, quoting Yarborough v. Alvarado, 541 U.S. 652, 674, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (Breyer, J., dissenting). Just as "children will often feel bound to submit to police questioning when an adult in the same circumstances would feel free to leave," children will likely perceive the questions, statements, or conduct of the police differently from how adults would. J.D.B., supra at 264-265, 131 S.Ct. 2394. See Commonwealth v. A Juvenile, 402 Mass. 275, 277, 521 N.E.2d 1368 (1988) ("On the question whether the juvenile was in custody, the test is how a reasonable person in the juvenile's position would have understood his situation"). Much like applying the reasonable juvenile standard to the custody analysis, accounting for the difference between juveniles and adults in the context of interrogation does not do "any damage to the objective nature" of the analysis. J.D.B., supra at 272, 131 S.Ct. 2394. Unlike other more idiosyncratic traits, a juvenile's age yields objective information about the juvenile's susceptibility to influences that are directly related to the interrogation analysis. See id. at 275, 131 S.Ct. 2394.
We have implicitly recognized this reality before. In Commonwealth v. Clark C., 59 Mass. App. Ct. 542, 545-546, 797 N.E.2d 5 (2003), we concluded that the officer's statement, "You said you were going to turn yourself in yesterday when I spoke with you," was the functional equivalent of express questioning. In doing so, we acknowledged that the motion judge took into account "all of the circumstances, including the fact that Clark C. was a juvenile." Id. at 546, 797 N.E.2d 5. We noted that one distinguishing factor between Clark C. and Commonwealth v. Figueroa, 56 Mass. App. Ct. 641, 779 N.E.2d 669 (2002), where the court affirmed the denial of the defendant's motion to suppress on otherwise similar facts, was that the defendant in Clark C. was a juvenile. See Clark C., supra at 548, 797 N.E.2d 5. Cf. Commonwealth v. Jackson, 471 Mass. 262, 266-267, 28 N.E.3d 437 (2015) (considering whether standard of reasonableness applied under duress analysis should be different or more forgiving for juveniles).
*161 Moreover, it would be challenging to engage in the proper analysis without considering the defendant's age. As the Supreme Court concluded, "in many cases involving juvenile suspects, the custody *549 analysis would be nonsensical absent some consideration of the suspect's age." J.D.B., 564 U.S. at 275, 131 S.Ct. 2394. As this case demonstrates, the same problem applies to determining whether interrogation occurred. Here, the officer was lecturing the defendant about "the negative things that the streets bring to people once you get into it." It is unlikely that the officer would have offered the same advice to an adult. In fact, on cross-examination, the officer confirmed that he was "trying to give [the defendant] advice as an adult to a child." It would be artificial to evaluate the circumstances of this case through the eyes of a reasonable adult, when the officer's guidance was premised upon the fact that the defendant was a juvenile. See id. at 275-276, 131 S.Ct. 2394 (nonsensical to consider how reasonable adult would "understand his situation, after being removed from a seventh-grade social studies class by a uniformed school resource officer").
Applying that standard, we discern no ground for disturbing the motion judge's conclusion that the officer's statements were not the functional equivalent of interrogation. "It is the defendant's burden to establish that he was subject to custodial interrogation." Sanchez, 476 Mass. at 735, 73 N.E.3d 246. On the sparse record provided, even taking into account the defendant's age, we cannot say that a reasonable sixteen year old in the same circumstances as the defendant would perceive the officer's statements to be interrogation. See Gonzalez, 465 Mass. at 674-675, 991 N.E.2d 1036 (reasonable person would not have perceived officer's statement that detectives wished to speak with him about incident as interrogation after officer twice told defendant that "now's not the time to talk"). See also Commonwealth v. Foley, 445 Mass. 1001, 1002-1003, 833 N.E.2d 130 (2005) ("Are you having a rough day, man?" was rhetorical question that was not functional equivalent of interrogation). Contrast Commonwealth v. Chadwick, 40 Mass. App. Ct. 425, 428, 664 N.E.2d 874 (1996) (officer's statement challenging defendant's denial of crime was interrogation because it invited response from reasonable person).
Here, the officer warned the defendant about "negative things that the streets bring to people," and advised him that if he didn't "clean up his act, he's going to wind up in serious trouble." "[T]here was nothing here in the nature of an accusatory inquiry or a demand for explanation." Martin, 467 Mass. at 309, 4 N.E.3d 1236. On this record, the officer's comments made no mention of the defendant's *162 specific situation on that day and, instead, constituted general advice that a reasonable juvenile would not interpret as calling for any inculpatory response. See Commonwealth v. Mitchell, 47 Mass. App. Ct. 178, 179, 711 N.E.2d 924 (1999) (officer's comment that it was "[t]ough luck getting locked up this close to Christmas" would not have been interpreted as interrogation by reasonable person because it did not call for any response). Cf. Commonwealth v. Bermudez, 83 Mass. App. Ct. 46, 52-53, 980 N.E.2d 462 (2012) (child's age is not determinative of custody analysis). Accordingly, we discern no error in the motion judge's conclusion that the defendant failed to meet his burden of showing that he was subject to the functional equivalent of interrogation at the time of transport.
3. Sufficiency of the evidence. a. Standard of review. "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "
*550 Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133, 99 N.E.3d 821 (2018), quoting Commonwealth v. Oberle, 476 Mass. 539, 547, 69 N.E.3d 993 (2017). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.' " Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303, 58 N.E.3d 1070 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713, 1 N.E.3d 762 (2014). "A conviction cannot stand, however, if it is based entirely on conjecture or speculation." Commonwealth v. Ayala, 481 Mass. 46, 51, 112 N.E.3d 239 (2018).
b. Proof of identity. "Proof of the identity of the person who committed the offense may be established in a number of ways and '[i]t is not necessary that any one witness should distinctly swear that the defendant was the man.' " Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483, 932 N.E.2d 301 (2010), quoting Commonwealth v. Davila, 17 Mass. App. Ct. 511, 512, 459 N.E.2d 1248 (1984). Here, the Commonwealth relied on circumstantial evidence, that, when taken together, "formed a 'mosaic' of evidence such that the jury could conclude, beyond a reasonable doubt, that the defendant was the shooter." Commonwealth v. Jones, 477 Mass. 307, 317, 77 N.E.3d 278 (2017), quoting Commonwealth v. Salim, 399 Mass. 227, 233, 503 N.E.2d 1267 (1987).
First, the Commonwealth introduced evidence of the video from a neighboring convenience store. Although the video did not show the shooting, it revealed an individual whom the jury could have identified as the defendant riding his bicycle past the convenience store. That individual, wearing a black shirt, gray shorts, *163 white socks, and black shoes, then rode out of the video frame. Less than two minutes later, an individual appeared biking in the opposite direction and rode his bike across the street, in the direction of the driveway where the victim was shot. Although that individual's face cannot be seen, he was wearing the same shoes, socks, and shorts, but appeared to have the black shirt tied around his head. At the base of the driveway, the individual dropped his bike on the ground, and briefly disappeared out of the video frame. Seconds later, the individual reappeared and ran away, but then returned to retrieve the bicycle. When the defendant was arrested, he was wearing blue jeans with gray shorts underneath, a black shirt, black shoes, and white socks. With the exception of the blue jeans over his shorts, the defendant's clothing entirely matched that of the individual seen in the video. Based on this evidence, the jury could have reasonably found that the defendant was the individual at the end of the video.
The Commonwealth also linked the video evidence to the eyewitness's description of the assailant. The witness saw a "kid ride up on a bike, drop the bike and pull a gun out." Although the witness did not see the individual's face, he described a person of average build, without a shirt on, riding a small green bicycle. The bicycle, build, and lack of shirt all matched images from the video.
Furthermore, the police found the defendant lying down in the back seat of a vehicle on Chase Street without the owner's consent. The witness's physical description of the individual matched that of the defendant. The bicycle the witness described and that was seen on the video matched the bicycle that was found near the defendant when he was arrested. See Jones, 477 Mass. at 316-318, 77 N.E.3d 278 (consciousness of guilt evidence combined with evidence of defendant's physical appearance matching witnesses' descriptions and defendant's familiarity with crime location was sufficient evidence to identify defendant as shooter);
*551 Commonwealth v. Brennan, 74 Mass. App. Ct. 44, 48, 903 N.E.2d 1140 (2009) (circumstantial evidence sufficient to identify defendant as perpetrator where defendant had similar clothing as burglar, was apprehended nearby, and had necessary knowledge to conduct burglary).
Finally, as mentioned, the Commonwealth presented evidence that the defendant made unprompted, inculpatory statements to a police officer during his transport from booking at the Lynn police station to Lowell. The jury could have reasonably found support for the defendant's guilt from his statements that "people *164 are going to feel sorry when he comes out" and he had been "proving himself." See Woods, 466 Mass. at 715, 1 N.E.3d 762.
Although the police officers encountered two other youths in the area where the defendant was arrested, and one male in the vehicle with the defendant, only the defendant fit both the description by the witness and the individual seen in the video. See Commonwealth v. Winfield, 76 Mass. App. Ct. 716, 721, 926 N.E.2d 550 (2010), quoting Commonwealth v. Fancy, 349 Mass. 196, 200, 207 N.E.2d 276 (1965) ("In order to convict on circumstantial evidence, it is not necessary to show that it was not in the power of any other person than the defendant to commit the crime"). Accordingly, although the defendant was never distinctly identified as the shooter, the circumstantial evidence adduced at trial was sufficient to support the jury's finding that the defendant was the shooter.
c. Intent to murder. " 'Conviction of assault with intent to murder requires proof of ... a specific intent to kill' and 'the absence of justification, excuse, and mitigation.' " Commonwealth v. Akara, 465 Mass. 245, 254, 988 N.E.2d 430 (2013), quoting Commonwealth v. Johnston, 446 Mass. 555, 558, 845 N.E.2d 350 (2006). Here, the evidence presented at trial was sufficient to support the jury's finding that the defendant had the specific intent to kill the victim. With no mitigating circumstances presented at trial, it was reasonable for the jury to infer an intent to kill from the defendant's use of a firearm. See Commonwealth v. Smith, 456 Mass. 476, 488, 924 N.E.2d 270 (2010). Moreover, based on the video evidence presented, the jury could have inferred that the defendant, covering his face with his shirt to conceal his identity, shot the victim at relatively close range and ran away. Even without evidence of a motive, the jury could reasonably conclude that the defendant intended to kill the victim and that there was an absence of justification, excuse, or mitigation.
Judgments affirmed.

It is undisputed that the defendant was in custody. At the time the officer made the statements to the defendant, he was under arrest and being transported from booking at the Lynn police station to Lowell.