## COMMONWEALTH *vs.* TIMOTHY TROMBLEY.

No. 07-P-725.

Hampshire. December 14, 2007. - July 8, 2008.

Present: LENK, ARMSTRONG, & GRAHAM, JJ.

*Practice, Criminal,* Admissions and confessions, Voluntariness of confession. *Constitutional Law,* Admissions and confessions.

A District Court judge erred in suppressing the criminal defendant's voluntary confession, given after a valid waiver of Miranda rights during a conversational interview — rather than an aggressive interrogation — that took place when the seventeen year old defendant, of his own accord, came to a police station with his mother, where the defendant was not entitled to his mother's continued presence during the interview, and where the police did not engage in "trickery" in separating the defendant from his mother during questioning; moreover, the absence of a recording of the interview was the defendant's choice and not the dominant factor in determining whether the confession was voluntary. [185-187]

COMPLAINT received and sworn to in the Eastern Hampshire Division of the District Court Department on January 17, 2006.

A pretrial motion to suppress evidence was heard by *W. Michael Ryan,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by him to the Appeals Court.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

*Adriana Contartese* for the defendant.

ARMSTRONG, J. By leave granted under Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), the Commonwealth appeals from a decision by a District Court judge suppressing a

confession made by the then seventeen year old defendant in the following circumstances.[1]

A Granby police officer, Kurt Carpenter, assigned to act as liaison to the high school, received information from a Department of Youth Services counsellor implicating one or more youths in a housebreak on August 24, 2005, in which a safe was stolen. One of those implicated acknowledged his guilt and named his two accomplices, one of whom was the defendant. On September 2, 2005, the defendant, accompanied by his mother and her boyfriend, appeared at the police station saying he heard there was a warrant out for his arrest.[2] Detective Mark Smith,[3] who was assigned to investigate the theft, interviewed the defendant and his mother in an interview room, after first asking the defendant if he wanted the interview recorded (the defendant did not), reading the defendant the Miranda rights (the defendant agreed to talk), and obtaining the defendant's and the mother's signatures on the Miranda card. After discussing the housebreak for some time and failing to get an acknowledgement from the defendant that he was a participant, Detective Smith left the interview room, reminding the defendant that another participant had said the defendant had been one of the group and advising him to think about it.

Smith then talked with Officer Carpenter, suggesting Carpenter might have more success based on his long acquaintance with the defendant. Carpenter then entered the interview room and talked with the defendant and his mother. At some point, Detective Smith knocked on the door and asked if he could talk with the defendant's mother. She left with Smith, and Officer Carpenter, now alone with the defendant, talked about the seriousness of the charges, told him the police thought he was not being entirely truthful about his involvement, and left the room to allow the defendant to "collect his thoughts." Upon Carpenter's return, the defendant made a clean breast of his participation in the theft and the events leading up to it. Officer Carpenter asked him to write

---

[1]The account that follows is based on the judge's findings of fact, as contrasted to his conclusions, corrected (without material change) to conform to the evidence.

[2]That information was wrong.

[3]Smith is variously referred to in the transcript as Detective, Officer, and Sergeant.

out a statement, and the defendant, taking twenty to thirty minutes, did so. The defendant was not arrested at that time but left the police station with his mother and her boyfriend.

On this set of facts, the judge concluded he should suppress the defendant's confession based on an amalgam of the following factors: first, that Detective Smith and Officer Carpenter had arranged, by "trickery," that the detective would separate the defendant from the support of his mother so as to weaken his resistance; second, that the defendant, although not technically a juvenile, was entitled to be treated as such, and thus to have the support of an interested adult, due to his youth and his lack of prior involvement with the police; third, that the interrogation had become "custodial" by Officer Carpenter's having told the defendant "to wait in the room by himself and to think things over"; fourth, that the defendant, whatever the reality was, "did not know that he was free to leave"; fifth, that the defendant's Miranda waiver was implicitly contingent on the mother's continued presence during the questioning and ended when she was called out; and sixth, that the failure of the officers to record the proceedings required the judge to view the confession and the waiver with skepticism.

The judge's rationale is not consistent with established principles, and, in some particulars, is inconsistent with the record and with his own findings. The judge had previously (i.e., earlier in his decision) found that the defendant's original Miranda waiver was knowing, voluntary, and intelligent, noting in particular that the defendant was seventeen and was a "a high school student in a system noted for excellence and in an age-appropriate grade . . . . [H]e is an intelligent if inexperienced young man." Nevertheless, he ruled that the waiver, although "knowingly, voluntarily and intelligently made, [could] be withdrawn at any time. Here the defendant waived his rights in his mother's presence to be questioned in his mother's presence." He was not informed, the judge reasoned, "that he could stop answering until his mother returned."

The ruling that the waiver was contingent on the mother's continued presence is based on nothing in this record other than the fact that she was with the defendant in the interview room when the interview began. Moreover, the very wording of the Miranda

rights advised the defendant he could "stop questioning *at any time*" (emphasis supplied) and, even more so, when his mother left the room. Contrary to the judge's finding concerning the defendant's inexperience with the police, the record shows that proceedings in this case were repeatedly continued due to conflicts with hearings in at least one other case pending against the defendant.

The "interested adult" rule, see *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 132-135 (1983), does not apply in this case because the defendant was seventeen. See *Commonwealth* v. *Carey*, 407 Mass. 528, 537 (1990); *Commonwealth* v. *Mavredakis*, 430 Mass. 848, 855 n.12 (2000). As the defendant "was not younger than seventeen . . . the presence of an 'interested adult' was not required." *Commonwealth* v. *Considine*, 448 Mass. 295, 297 n.7 (2007).

The finding that the defendant did not know he was free to leave, if treated as a finding of basic fact, was based on nothing in the testimony or the defendant's affidavit, and if treated as a conclusion of fact, was inapposite because the test is an objective one: "whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that he was in custody." *Commonwealth* v. *Damiano*, 422 Mass. 10, 13 (1996). *Commonwealth* v. *Groome*, 435 Mass. 201, 211 (2001). *Commonwealth* v. *Almonte*, 444 Mass. 511, 517, cert. denied, 546 U.S. 1040 (2005). As to the factors to be considered in determining that question, see *Commonwealth* v. *Groome, supra* at 211-212, and *Commonwealth* v. *Almonte, supra* at 517-518. While it is true that the officers told the defendant he was a suspect, and the interview took place in the police station, the nature of the interrogation was conversational rather than aggressive throughout, and the defendant had come to the police station voluntarily and was permitted to leave with his mother at the end. See *Commonwealth* v. *Gil*, 393 Mass. 204, 212 (1984); *Commonwealth* v. *Almonte, supra* at 518. So far as the record discloses, none of the other perpetrators was in custody. The fact that Miranda warnings were given did not make the interview custodial. *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 n.8 (1984).

Nothing in the evidence supports the judge's characterization of Detective Smith's asking to speak with the defendant's

mother as "trickery," or his finding that this was done by prearrangement between the two officers. The judge could fairly infer that Smith's intervention was aimed at weakening the defendant's resistance to admitting his involvement, but there was nothing false or surreptitious about it. Contrast *Commonwealth* v. *Jackson,* 377 Mass. 319, 326-329 (1979); *Commonwealth* v. *Forde,* 392 Mass. 453, 455 (1984); *Commonwealth* v. *Selby,* 420 Mass. 656, 658 (1995); *Commonwealth* v. *Edwards,* 420 Mass. 666, 669 (1995); *Commonwealth* v. *DiGiambattista,* 442 Mass. 423, 427 (2004). See *Commonwealth* v. *Scoggins,* 439 Mass. 571, 576-577 (2003). As indicated *supra,* under the applicable law, the defendant was not entitled to the presence of an interested adult.

Although the Supreme Judicial Court has laid increasing stress on the desirability of electronic recording of custodial confessions or confessions made in places of detention, see *Commonwealth* v. *Diaz,* 422 Mass. 269, 272-273 (1996); *Commonwealth* v. *Groome,* 435 Mass. at 219 n.26; *Commonwealth* v. *Scoggins,* 439 Mass. at 577 n.4; *Commonwealth* v *DiGiambattista,* 442 Mass. at 425, 440-449, the absence of a recording is nevertheless one factor to be considered in an "overarching requirement that the voluntariness of a defendant's statement be determined on the totality of the circumstances." *Id.* at 448. Where, as here, the absence of a recording was the choice of the defendant and there is no suggestion of overbearing or coercive tactics by the police, the absence of a recording should not be made the dominant factor in determining that the confession was involuntary.

The order suppressing the defendant's confession given on September 2, 2005, is therefore reversed.

*So ordered.*