## COMMONWEALTH *vs.* JOSE A. BERMUDEZ.

No. 12-P-314.

Hampden. October 10, 2012. - December 28, 2012.

Present: GRASSO, FECTEAU, & AGNES, JJ.

*Constitutional Law,* Voluntariness of statement. *Evidence,* Voluntariness of statement. *Practice, Criminal,* Voluntariness of statement, Motion to suppress, Interlocutory appeal.

A Superior Court judge erred in granting the criminal defendant's pretrial motion to suppress statements that he made to police officers during a recorded interview at a police station, where the interrogation, viewed objectively and in its totality, was not custodial (and therefore did not require Miranda warnings), in that the defendant appeared voluntarily, accompanied by his mother; the questioning was conversational and nonthreatening in tone; the detectives involved repeatedly told the defendant that he would be allowed to return home; and the defendant's age (a few months shy of eighteen) placed him on the cusp of majority, far removed from the tender years of early adolescence; further, in the circumstances, the failure to have an interested adult present during the actual questioning did not require suppression of the statements. [50-54]

INDICTMENTS found and returned in the Superior Court Department on July 15, 2011.

A pretrial motion to suppress evidence was heard by *Cornelius J. Moriarty, II,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ralph D. Gants,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Katherine A. Robertson,* Assistant District Attorney, for the Commonwealth.

*Bernard T. O'Connor, Jr.,* for the defendant.

GRASSO, J. This is the Commonwealth's interlocutory appeal from an order allowing a motion to suppress statements that the defendant, Jose A. Bermudez, then seventeen years old, made to

the police during a recorded interview at the Holyoke police station. A Superior Court judge ruled that (1) the interview amounted to custodial interrogation, necessitating a waiver of Miranda rights, and (2) the defendant's waiver of his Miranda rights was not knowing, intelligent, and voluntary. We reverse, as the judge erred in ruling the interview was custodial.

1. *Background.* Charged with multiple firearm offenses and as an accessory before the fact,[1] the defendant moved to suppress his statements to detectives of the Holyoke police department because (1) an "interested adult" was not present with him during the interview and (2) he did not waive his Miranda rights knowingly, intelligently, and voluntarily. After hearing testimony and viewing a video recording of the police interview of the defendant, the judge made factual findings and rulings that allowed the defendant's motion. The judge concluded that (1) although "a close question," the interview was custodial in nature so as to require Miranda warnings, and (2) given "the defendant's young age, limited education and intellectual abilities, and indulging every reasonable presumption against waiver," the Commonwealth failed to establish beyond a reasonable doubt that the defendant's waiver of Miranda rights was knowing, intelligent, and voluntary.[2]

2. *Facts.* Mindful that assessment of witness credibility is the province of the motion judge, we accept the judge's subsidiary findings of fact, supplementing them with uncontested testimony from the suppression hearing that the judge explicitly or implicitly

---

[1]The charges include carrying a firearm without a license (G. L. c. 269, § 10[*a*]); possession of a loaded firearm (G. L. c. 269, § 10[*n*]); and accessory before the fact to assault and battery (G. L. c. 274, § 2).

[2]Because the interrogation was not custodial, we need not address whether the judge erred in ruling that the defendant's waiver of Miranda rights was not knowing, intelligent, and voluntary. The Commonwealth contends that the judge misapprehended the governing standard by improperly "indulging every reasonable presumption against waiver," see *Commonwealth* v. *Simon*, 456 Mass. 280, 305-306 (2010) (Botsford, J., dissenting), when the judge's factual findings and the video recording demonstrate that the officers administered Miranda rights appropriately, and the defendant appeared sober and coherent, had no difficulty understanding the police, and appeared to have his self-interest in mind throughout the interview. See *Commonwealth* v. *Trombley*, 72 Mass. App. Ct. 183, 185 (2008) (judge's rationale not consistent with established principles, and in some particulars inconsistent with record and findings).

credited. See *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007); *Commonwealth* v. *Johnson,* 461 Mass. 44, 48 (2011).

On January 1, 2011, a shooting occurred at Manny's Market (market) in Holyoke during which Michael Rivera was injured. After reviewing the market's security surveillance video, the police sought to interview the defendant. They believed the defendant was the individual named Jay or JJ who was observed handling an item shortly before the shooting.

On January 6, 2011, Holyoke police Detectives John Sevigne and James McGillicuddy went to the apartment at 470 Maple St., third floor, in Holyoke, where the defendant lived with his mother, Anne Marie Rodriguez. The defendant was not home, but the detectives spoke with Rodriguez and told her that they were investigating a shooting at the market and would like to speak with the defendant.[3] Rodriguez told the detectives that she would speak with her son when he returned and bring him to the police station to speak with them.

When the defendant returned home, his mother drove him to the station. At approximately 4:25 P.M., the defendant and his mother arrived in the lobby of the police station and indicated that they were there at the detectives' request. They proceeded, as directed, to the criminal investigation bureau, a secure area on the second floor. There, they met Detective Sevigne in the lobby, a small waiting room with several chairs, some magazines, and a glass window.

In a conversational tone, Sevigne told the defendant that he and McGillicuddy would like to speak with him regarding the shooting. While the defendant's mother remained in the lobby, Sevigne, McGillicuddy, and the defendant proceeded to an interview room, a small room containing a desk and four chairs that is equipped for video recording.

The detectives advised the defendant that the interview could be recorded.[4] The defendant, who is fluent in English, assented to the recording, and the interview commenced. The defendant confirmed for the officers that he was born on April 9, 1993, making him seventeen years old, and approximately three months

---

[3]The police did not indicate to Rodriguez that the defendant was a suspect.

[4]In the video, the officers are dressed casually, in civilian clothing, and are not visibly carrying weapons.

shy of his eighteenth birthday. At the beginning of the interview, Sevigne explained the defendant's Miranda rights by reading each of the rights aloud from a card and asking the defendant if he understood each of those rights.[5] Sevigne confirmed that the defendant could read and write English and asked the defendant to read the first line of the card aloud, and the remainder to himself. The defendant began reading the Miranda rights card aloud without difficulty.[6]

After the defendant finished reading his Miranda rights, Sevigne asked the defendant whether he understood his rights and whether he wished to have any of the rights explained to him. The defendant stated he understood the rights and did not require any explanation. The defendant then signed and dated the Miranda rights card. The defendant had some difficulty regarding how to date the card (whether with the number or the name of the month) and with the correct spelling of "January."[7]

At the time of the interview, the defendant was a ninth grade student at Dean Tech High School in Holyoke in special education classes. When he was in sixth grade, the defendant was diagnosed as having special needs, particularly in reading and writing.[8]

The interview proceeded in a conversational and nonthreatening manner and lasted about seventy minutes. Although the defendant appeared nervous at times, he responded unhesitatingly and appropriately. He appeared sober and coherent throughout the interview and had no difficulty understanding the detectives, nor they him. The defendant was never handcuffed or restrained, and the detectives repeatedly told him that he was

---

[5] The defendant made no claim that the police failed properly to advise him of his Miranda rights.

[6] After reading the first line aloud, the defendant began to read the second aloud as well. Sevigne reminded the defendant that he could read the rest of the lines to himself from that point.

[7] The defendant spelled the month as "Jaunry."

[8] The record does not support the judge's factual finding that the defendant could only read at the sixth grade level. While the defendant's mother testified that the defendant was diagnosed as having special needs when he was in sixth grade, nothing in the record establishes the defendant's reading level. Nor does anything in the record establish that the defendant's special needs include any cognitive limitations or specific difficulties in reading, writing, or comprehension.

not a suspect in the shooting and would be allowed to return home with his mother.

In response to the detectives' questions, the defendant first stated that he knew nothing of the shooting. After further prodding by police to "tell the truth," the defendant changed his story several times, eventually admitting that on the day of the shooting he had a firearm, that someone he knew requested it, and that he gave that person the firearm.

At the conclusion of the interview, the detectives prepared a typewritten copy of the defendant's statement, and the defendant read, corrected, initialled, and signed the statement. After the interview concluded, the defendant remained in the interview room for an additional thirty minutes looking at photograph arrays to determine whether he could identify the individual to whom he gave the gun. The defendant told the police that he could not identify the shooter, and left the police station with his mother.

3. *Discussion.* "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting from *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). Where the judge's factual findings are based on a videotape of the defendant's interview, "we . . . 'take an independent view' of recorded confessions and make judgments with respect to their contents without deference to the fact finder, who 'is in no better position to evaluate the[ir] content and significance.' " *Commonwealth* v. *Novo*, 442 Mass. 262, 266 (2004), quoting from *Commonwealth* v. *Bean*, 435 Mass. 708, 714 n.15 (2002). See *Commonwealth* v. *Hoyt*, 461 Mass. 143, 148-149 (2011); *Commonwealth* v. *Clarke*, 461 Mass. 336, 341 (2012). With these principles in mind, and having viewed the interrogation videotape in its entirety, we conclude that the judge erred in his application of the law to these facts and in his ultimate ruling that the interrogation was custodial because "a reasonable person of [the defendant's] age, experience and intelligence would find the environment . . . coercive." Viewed in their totality, and including consideration of the defendant's age, the circumstances of the defendant's interrogation were not custodial so as to trig-

ger the requirements of *Miranda* v. *Arizona,* 384 U.S. 436, 467-479 (1966). See *J.D.B.* v. *North Carolina,* 131 S. Ct. 2394, 2406 (2011).

"Miranda warnings are only necessary where one is the subject of 'custody and official interrogation.' " *Commonwealth* v. *Larkin,* 429 Mass. 426, 432 (1999), quoting from *Illinois* v. *Perkins,* 496 U.S. 292, 297 (1990). Unless both are present, Miranda rights are not implicated. Whether a suspect is subject to custodial interrogation is a question of Federal constitutional law, upon which the defendant bears the burden of proof. See *Commonwealth* v. *Larkin, supra; Commonwealth* v. *Kirwan,* 448 Mass. 304, 309 (2007). Here, there is no doubt that the defendant's interview was "interrogation." What is in dispute is whether it was "custodial." Viewed objectively and in its totality, the interrogation that occurred in this case was not custodial, and the defendant's proof does not establish otherwise.

Custody for purposes of *Miranda* attaches where there is a "formal arrest" or a "restraint of movement akin to formal arrest." *California* v. *Beheler,* 463 U.S. 1121, 1125 (1983), quoting from *Oregon* v. *Mathiason,* 429 U.S. 492, 495 (1977). *Stansbury* v. *California,* 511 U.S. 318, 322 (1994). We discern no such restraint in the objective circumstances of the defendant's interrogation. The fact that the questioning occurred in a "secure" area within the police station did not render it custodial. See *Commonwealth* v. *Sparks,* 433 Mass. 654, 657 (2001); *Commonwealth* v. *Murphy,* 442 Mass. 485, 492-493 (2004); *Commonwealth* v. *Morales,* 461 Mass. 765, 774-775 (2012). Nor does the giving of Miranda warnings. See *Commonwealth* v. *Trombley,* 72 Mass. App. Ct. 183, 186 (2008). The pertinent inquiry is whether the relevant environment presented the same inherently coercive pressures as the type of police station questioning at issue in *Miranda.*

In making that determination, we consider whether all the objective circumstances add up to custody rather than evaluating the circumstances one by one. See *J.D.B.* v. *North Carolina,* 131 S. Ct. at 2407; *Commonwealth* v. *Sneed,* 440 Mass. 216, 220-221 (2003). Relevant factors in assessing the objective circumstances of the interrogation include where the questioning occurred, how long it lasted, what was said, any physical

restraints on the suspect's movement, and whether he was told he would be free to leave at the conclusion of the interview. See *Commonwealth* v. *Sneed, supra*; *Commonwealth* v. *Hilton*, 443 Mass. 597, 609 (2005). As well, "a child's age properly informs the Miranda custody analysis." *J.D.B.* v. *North Carolina, supra* at 2399. This is so because "[i]n some circumstances, a child's age 'would have affected how a reasonable person' in the suspect's position 'would perceive his or her freedom to leave' . . . [such that] a reasonable child subjected to police questioning will sometimes feel pressured to submit when a reasonable adult would feel free to go." *Id.* at 2402-2403, quoting from *Stansbury* v. *California, supra* at 325.[9] "This is not to say that a child's age will be a determinative, or even a significant, factor in every case." *J.D.B.* v. *North Carolina, supra* at 2406. It is the totality of these circumstances — the external circumstances of the interrogation itself — that are determinative. "Once the scene is set and the players' lines and actions are reconstructed, [we] apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Id.* at 2402, quoting from *Thompson* v. *Keohane*, 516 U.S. 99, 112 (1995).

Applying these factors to the facts found by the judge and the objective circumstances depicted in the interrogation videotape, we conclude that the defendant's interrogation was not custodial. Although the interrogation occurred at the police station, the defendant appeared there voluntarily, accompanied by his mother, in response to a police request. He was neither under arrest nor escorted to the station by the police. The interrogation lasted seventy minutes, and the defendant sat next to the door throughout the interview. One of the two interviewing officers left the room from time to time, and the other sat across from the defendant behind a desk next to a computer. The questioning was conversational and nonthreatening in tone, and the detectives repeatedly told the defendant, who was not handcuffed or restrained in any way, that he would be allowed to return home

---

[9]At the same time, the United States Supreme Court noted, "considering age in the custody analysis in no way involves a determination of how youth 'subjectively affect[s]' the mindset' of any particular child." *J.D.B.* v. *North Carolina, supra* at 2405.

with his mother, as he ultimately was. The defendant's age, a few months shy of his eighteenth birthday, placed him on the cusp of majority, and far removed from the tender years of early adolescence. Viewing all the pertinent factors objectively, including the defendant's age at the time of the interview, we conclude that the interrogation was not custodial so as to require Miranda warnings. See *Commonwealth* v. *Trombley*, 72 Mass. App. Ct. at 186.

The defendant does not argue, as he did below, that the failure to have an interested adult present required suppression of his statements. Although under the age of majority at the time, the defendant was beyond the age where Massachusetts requires consultation with an interested adult for a waiver to be effective. See *Commonwealth* v. *Dillon D.*, 448 Mass. 793, 796 (2007), quoting from *Commonwealth* v. *McCra*, 427 Mass. 564, 568 n.2 (1998) ("[I]n order to waive their Miranda rights validly, juveniles under fourteen years old must 'actually consult' with an interested adult"). He was even beyond the age where we would require an opportunity to consult with an interested adult. See *Commonwealth* v. *Trombley*, 72 Mass. App. Ct. at 186.[10] Instead, the defendant maintains that the circumstances of the interrogation, in combination with his age and status as a special needs student, rendered the interrogation custodial because a reasonable person of his age and cognitive ability would not have believed he was free to end the interrogation and leave.

While we agree that after *J.D.B.* v. *North Carolina, supra,* the defendant's age is a factor in the custody determination, we disagree that other individualized factors peculiar to the defendant, such as his status as a special needs student, bear on that determination.[11] *J.D.B.* expressly disavows such a view.[12] "By

---

[10]In any event, the interested adult rule is inapplicable when the interrogation is not custodial, because there is no obligation to inform a juvenile of Miranda rights. See *Commonwealth* v. *Ira I.*, 439 Mass. 805, 815 n.11 (2003).

[11]Of course, such individualized factors remain applicable in determining the voluntariness of a Miranda waiver, and of the statements themselves. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 673-674 (1995); *Commonwealth* v. *St. Peter*, 48 Mass. App. Ct. 517, 520-522 (2000).

[12]In concluding that the interrogation was custodial because "a reasonable person of [the defendant's] age, experience and intelligence would find the environment . . . coercive," the judge made no reference to the decision in *J.D.B.* v. *North Carolina, supra.*

limiting analysis to the objective circumstances of the interrogation, and asking how a reasonable person in the suspect's position would understand his freedom to terminate questioning and leave, the objective test avoids burdening police with the task of anticipating the idiosyncrasies of every individual suspect and divining how those particular traits affect each person's subjective state of mind." *J.D.B.* v. *North Carolina, supra* at 2402. In holding that age is properly a factor in assessing whether an interrogation is "custodial," *J.D.B., supra,* did not change the custody determination into a subjective inquiry. Rather, the United States Supreme Court concluded that if known to the police, consideration of the age of a minor in the custody analysis is consistent with the objective nature of that test and "a reality that courts cannot simply ignore." *Id.* at 2406.

Because the defendant's interrogation was not custodial, no Miranda warnings were necessary, and the judge erred by ruling otherwise. We reverse the order allowing the defendant's motion to suppress his statements and remand to the Superior Court for further proceedings.

*So ordered.*